IN ERROR.

ALBANY,
Nov. 1822.

MUMFORD
v.
NICOLL.

GURDON S. MUMFORD, Appellant,
*against*
FRANCIS H. NICOLL and WILLIAM VANDEWATER, Respondents.

APPEAL from the Court of Chancery. The respondents, on the 4th of *August*, 1817, filed their bill against the appellant. The bill stated, among other things, that in *December*, 1815, and before, the appellant and *Samuel Stilwell* were joint owners of the brig *Phœnix*, and her cargo, which was shipped in their joint names, and the vessel, with the cargo, was sent on a trading voyage, from *New-York* to the *Mediterranean*. The vessel arrived at *Gibraltar*, where the master sold part of the cargo, and invested the proceeds in merchandise, with which, and such parts of the original cargo as remained unsold, he proceeded to *Messina*, where he disposed of the whole cargo, and invested the proceeds in wine, and oil, &c., with which he proceeded to the coast of *Brazil*, where this cargo was sold, and the proceeds invested in another cargo, with which he proceeded to the *Havana*, where he sold the whole of the last cargo, and the brig; and invested the proceeds arising from the sale of the vessel and cargo in sugar and coffee. *Stilwell* having become insolvent, the appellant, who had heard of the arrival of the *Phœnix* at *Havana*, wrote to the master, directing him to consign all the property purchased, with the proceeds of the sale of the brig and her cargo, to the appellant, individually. The master, accordingly, shipped the sugar and coffee so purchased, with the proceeds of the *Phœnix*, and her cargo, on board the brig *Newton*, of which he was master, and consigned the same to the appellant, individually, as if he was the sole owner. The *Newton* arrived at *New-York*, with her cargo so consigned to the appellant, on the 24th of *February*, 1817;

*Though the part owners of a ship are, generally speaking, tenants in common, yet there may be a special partnership between them, in the ship, as well as in the cargo, in regard to a particular voyage, or adventure, and in the proceeds arising from the sale of them, and the profits of the voyage.*

*And where, in such a case, one of two owners, receives, or gets possession of, the whole proceeds, he has a right to retain them until he is paid or indemnified for what he has advanced or paid more than his share, for outfits, repairs, or expenses of the vessel for the particular voyage or adventure; but not for a general balance of account arising from former and dis-*

tinct voyages or adventures in which they have been concerned together, in the same, or other vessels, there being no general partnership between them, and each adventure creating a special partnership, by itself, which terminated with the particular adventure.

and by virtue of the bills of lading and invoices, the ap-
pellant entered the cargo at the custom house, took pos-
session of the whole of it, and sold it, as his own.
The bill alleged, that *Stilwell*, as half owner of the brig
*Phœnix*, and her cargo, was entitled to a full and equal
share of the profits and proceeds of all the adventures,
sales, and investments aforesaid ; and, being insolvent, *S.*,
on the 27th of *April*, 1816, made an assignment to the re-
spondents, by deed, of all his stock in trade, debts, and
property of every nature, in *trust*, to pay his *bona fide* cre-
ditors named in the assignment ; and in the schedule annexed
to the assignment, his share in the *Phœnix* and her cargo,
&c. is mentioned as part of the property so assigned by him
to the respondents.   That at the time, or soon after the ex-
ecution of the assignment, and long before the arrival of
the *Newton* and her cargo at *New-York*, the appellant had
notice of the assignment ; and that the respondents claimed
all the share of *Stilwell* in the *Newton's* cargo.   That re-
lying on receiving the property so assigned to them, the re-
spondents have paid *S.'s* debts to a large amount, and have
also paid his custom-house bonds to the amount of 20,000
dollars, and upwards.   That *S.'s* property, including his
share in the *Newton's* cargo, assigned to the respondents,
will be insufficient to pay the amount of the custom-
house bonds, and the debts due to the creditors for whose
benefit the assignment was made ; and who, relying on that
assignment, have, in pursuance of the stipulation contained
in it, by an instrument under their hands and seals, dis-
charged *S.* from his debts.   That the respondents had de-
manded of the appellant the share of the *Newton's* cargo,
belonging to *S.*, which the appellant had refused to deliver,
or to pay to them the proceeds thereof.   The bill prayed
for an account, &c., and that the appellant pay over to
them the half of the proceeds of the *Newton's* cargo, &c.

  The answer of the appellant admitted the facts stated in
the bill relative to the joint adventure and voyage of the
*Phœnix* and her cargo.   He further stated, that he, and *S.*,
having been jointly concerned in other mercantile transac-
tions and property, among others, in a ship called the
*Union*, and a ship called the *Orris*, and in the schooner

IN ERROR.
........

ALBANY,
Nov. 1822.

MUMFORD
v.
NICOLL.

*Phœnix,* (afterwards altered to a brig,) and in voyages made by those vessels on their joint account. That *S.* being largely indebted to him, on account of those joint commercial transactions, and having become insolvent, and unable to pay what he owed to the appellant; and the appellant having no other means of indemnifying himself for the loss he had sustained by reason of his connexion with *S.*, wrote to the master of the brig *Phœnix,* informing him of the insolvency of *S.*, and advising him to consign the cargo purchased at the *Havana,* with the proceeds of the *P.*, and her cargo, to the appellant; and that, in consequence of that information and advice, and, also, of merchants residing at *H.*, the master, accordingly, assigned the cargo of sugar and coffee, as mentioned in the bill, to the appellant; and that he took possession of, and disposed of the same, and had appropriated the proceeds towards the payment of the debts due to him from *Stilwell,* as, he insisted, he had a right to do. He denied, that *S.* was entitled to any share of those proceeds, because, on a settlement of their partnership accounts, and after appropriating the whole proceeds of *Stilwell's* share in the cargo, towards paying what he owed to the appellant on such settlement, he would still remain indebted to the appellant more than 2,000 dollars. That the appellant, as joint owner of the *Phœnix,* had lately paid upwards of 1,600 dollars, to different persons, for work done to the brig, and other expenses, and for which the appellant had long before accounted with *S.*, and paid to him his full proportion, being assured by *S.*, that the whole had been paid by him; and that a suit was now pending in the Supreme Court, by the respondent, *Nicoll,* and his partners, against the appellant, for above 2,000 dollars claimed for shipchandlery furnished to the appellant and *Stilwell;* and for which the appellant had long since paid *S.*, being informed by him that he had paid and settled for the whole.

Proofs were taken in the cause; and the material parts of the testimony, as to facts not admitted in the pleadings, are sufficiently stated in the opinions delivered by the Judges in this Court. The cause having been heard in the Court below, the Chancellor pronounced a decree:

That *M.* and *S.* were owners, as tenants in common, in equal moieties, of the brig *Phœnix*, and were special partners, having a joint interest in the cargo and voyage of the said brig; that the partnership, in the cargo and voyage, was one entire and distinct concern, unconnected with any former partnership, in any former voyage, in any other vessel or vessels; and it was thereupon referred to a master, to take and state an account between the respondents, as assignees of *S.*, and *M.*, in respect to the brig *Phœnix*, and her cargo, and voyage, and that *M.* be charged with a moiety of the net proceeds of the brig sold at the *Havana*; and, also, with a moiety of the net proceeds of the freight and cargo of the brig, on the voyage mentioned in the pleadings, or so much, if any, of the net proceeds of the moiety of the freight and cargo, as should appear to be due to the respondents, as assignees of *S.*, after deducting the balance, if any, found due to *M.*, from *S.*, on an account to be taken and stated between them, in respect to such joint concern in the said freight, cargo, and adventure, after all just allowances between them, in respect to such joint concern, are made; and that interest be allowed, &c.

The CHANCELLOR assigned his reasons for this decree; for which see S. C. 4 *Johns. Ch. Rep.* 522—525. 530.

*J. O. Hoffman*, for the appellant, contended, 1. That as the freight and cargo of the *Phœnix* were, undeniably, a *partnership* concern, the vessel itself must, under the circumstances of the case, be, also, considered as partnership property, and the accounts between the parties ought to be taken and stated on that principle. Why may not the contract and law of partnership apply to vessels as well as any other mercantile concern? No doubt, *prima facie*, owners of vessels are *tenants in common*. The cases cited by the Chancellor, as to the maritime law on this subject, will not be disputed. But can there be no partnership in a warehouse, a stage coach, a livery stable, and the like? If things of that nature are, necessarily and essentially, connected with the partnership business, they cease to be property held by a tenancy in common, and become partnership

property. The vessel, in this case, was not hired, but was
held by *M.* and *S.* as partners in business, and was to be sold
in the same manner as the cargo. She was not let to freight;
and it was the clear understanding of the parties, that she
was a part of their stock in trade. The Chancellor admits,
that in *Doddington* v. *Hallet,* (1 *Vesey,* 497.) Lord *Hard-
wicke* expressly decided this question. " It must be admit-
ted, the ship may be the subject of partnership as well as
any thing else ; the use and earnings thereof being proper
subject of trade, and the letting a ship to freight as much a
trade as any other." " The foundation of the partnership
stock is the ship itself, which must be employed, and the
earnings and profits arise. Undoubtedly, all these persons
subject to this agreement are liable, *in solido,* to the trades-
men who fitted it out ; and this agreement for proportional
shares, is as between themselves ; which is the case of all
partnerships; but as to all persons furnishing goods or mer-
chandise, or employed in work, each are liable *in solido.*"(a)

(a) But see the notes and observations of Mr. *Belt,* in his " *Supplement
to the Reports of Vesey, senior,*" p. 205–209. 84. Mr. *Belt* gives the agree-
ment between the parties in that case, *verbatim,* and observes, " it appears
rather singular that Lord *Hardwicke* should have said so much as is reported
on the subject, of the contractors being partners, since the agreement between
them on the inceptive undertaking, negatives such a supposition as strongly as
terms could make it, and since this very agreement is pressed by the defendant's
counsel towards the top of p. 498." " This agreement is distinguishable from
that of partnership, in which case each partner is liable *in solido,* on account
of the transaction, the interest being joint. This is a covenant *severally,
not jointly;* there being an express provision to prevent being accountable in
any other way. It is a distinct, undivided interest; such tenants are in com-
mon, not liable *in solido ;* and tenants in common of ships, are not to be put
on the foot of a partnership trade, which is a fluctuating stock." Mr. *Belt*
states, that " the doctrine reported in the above case, ' that part owners in a
ship are partners, and liable *in solido,* for all goods furnished, and repairs
done,' has been overruled on great consideration." And he refers to *Ex
parte Young,* 2 *Ves.* & *Bea.* 242. *Ex parte Harrison, in the matter of Ni-
cholson,* 2 *Rose's Cases in Bankruptcy,* 76. and *Brent* v. *Hay, (February* 10,
1815,) " which governed many other cases waiting that determination." *Mon-
tagu (on Partnership,* vol. 1. p. 102. and see note (z) p. 88, 89. of notes)
cites the case of *Ex parte Gibson, in re Peacock,* (4th of *November,* 1808,)
as deciding that a bankrupt's interest in a moiety of a vessel, is the *separate*
property of the bankrupt; and is not to be held by the assignees for the pur-
pose of paying the joint creditors of the ship.

Mr. *Watson,* in his *Treatise on the Law of Partnership,* (p. 139. 142. 2d ed.
1807,) adopts the doctrine of Lord *Hardwicke* without any hesitation or com-
ment, as the settled law. And he ranks these joint adventures by part owners

In the case *Ex parte Young*, (2 *Ves. & Beame*, 242.) the vessel had been let to freight, and the bankrupts were managing owners.   In all the cases, the distinction is observed between ships used for letting to freight, or otherwise.   The case *Ex parte Parry*, (5 *Vesey*, 575.) appears to have no bearing on the present case.   It is wholly immaterial, as regards insurance, whether it is a partnership, or tenancy in common. Each partner or owner may separately insure.   In *Smith* v. *De Silva*, (*Cowp*. 469.) Lord *Mansfield* decided on the principle laid down by Lord *Hardwicke*, whose decision must have been assented to, and acted upon, for half a century.   In *Ex parte Christie*, (10 *Vesey*, jr. 105.) Lord *Eldon* said, " unless it could be made out, that part owners of a ship are not partners, this was nothing more than a set-off of a separate debt against a joint debt;" (*Abbott on Ships*, 3d ed. 99.) and he adopts the principle we contend for, in refusing to allow the set-off in that case.

2. Again ; although the appellant and *Stilwell* were not general partners, as to all their commercial concerns, yet they were carrying on, as partners, and at the same time, a number of adventures, in respect to the ships *Union*, and *Orris*, and the brig *Phœnix*, and their respective cargoes, which formed, and so it was considered and treated between themselves, as one and the same partnership connexion. The account, therefore, should have been directed to be taken between *Stilwell* and the appellant, and between the respondents and the appellant, of the unsettled concern of the *Union*, *Orris*, and *Phœnix*, and their respective cargoes and adventures.

3. But, we contend, that the appellant had a *lien* on the proceeds of the *Phœnix and her cargo*, in his hands, for the general balance of his account against *Stilwell*. Lord *Hardwicke*, in *Doddington* v. *Hallet*, held, that the plaintiffs had a specific lien on the share of *Hall*, for what they had paid, or were liable to pay to tradesmen, for building

of ships, as special partnerships, in which they have all the rights, and are subject to all the liabilities of partners; but the relation of copartnership ceases with the particular adventure, and, at no time, extends to any of their other concerns.  (p. 54, 55.)

IN ERROR.

ALBANY,
Nov. 1822.

MUMFORD.
v.
NICOLL.

and equipping the ship. And Mr. *Abbott*, (*on Ships*, 96, 97. 3d ed.) in his remarks on the case, says, that the usage or course of trade was to charge the *assignee or purchaser*, in account, for the outfit, and other expenses incurred, in respect of the voyage of which he is entitled, in consequence of his purchase, to share the profits. The assignment by *Stilwell* is not for the benefit of *all* his creditors, as the Chancellor appears to suppose, but for certain creditors, named in the assignment, to whom he gives a preference, most unjustly, as regards the appellant.

*Henry*, contra. This Court have decided, that an insolvent debtor may lawfully prefer one creditor to another. (*Murray v. Riggs*, 15 *Johns. Rep.* 571.) The Court are bound to give effect to the assignment in the present case, as much as if it had been made for all the creditors generally. There is no pretence, that it was fraudulent. The respondents, as assignees of *Stilwell*, have a legal preference, and they have, at least, equal equity with the appellant, even on the foot of the *lien* claimed by him. The appellant had notice of this assignment before the property was consigned to him. Is not, then, the equity with the respondents? Notwithstanding the opinion of Lord *Hardwicke*, in *Doddington v. Hallet*, every one must perceive great force and solidity in the brief argument of the defendants' counsel, as reported in that case. The appellant was bound to show, affirmatively, that the vessel was converted into partnership stock. There was no freight received, for the plain reason that the vessel was the property of the owners of the cargo. It is admitted, that Lord *Hardwicke* went the full length of allowing the partnership lien. But the cases of *Ex parte Young*, *Ex parte Harison*, *Ex parte Gibson*, *Ex parte Parry*, and *Ex parte Browne*, (6 *Vesey*, 136.) and the opinions of Mr. *Abbott* and Mr. *Belt*, all stand opposed to the decision of Lord *Hardwicke*, and which must be now regarded as expressly overruled by Lord *Eldon*.

The *lien* of the appellant, if it could exist at all, remained no longer than to the time when the *Phœnix* was sold, and converted into money. Whenever the subject of the *lien* is parted with, the *lien* is gone. It is said, that the appellant,

IN ERROR.
°°°°°°
ALBANY,
Nov. 1822.

MUMFORD
v.
NICOLL.

having the rightful and lawful possession of these proceeds, has a specific *lien* on them for the general balance of his account. We answer, that the conduct of the appellant, in causing the proceeds of the *Phœnix*, and her cargo, to be shipped to him individually, for the purpose of obtaining possession of the whole, was inequitable and unjust. The possession was acquired wrongfully. A person who gets possession of a thing by misrepresentation, will not be allowed to retain it on the ground of a *lien*, to which he might otherwise have been entitled. (*Madden* v. *Kempster*, 1 *Camp. N. P.* 12.) So, if a person claims and obtains the possession of goods, wrongfully, on paying freight and expenses, he cannot retain them, until he is indemnified for what he has paid. (*Lempriere* v. *Pasley*, 2 *Term Rep.* 485.) The possession, then, acquired by the appellant, after notice of the assignment of *Stilwell's* share, can never bar the equity of the respondents.

*T. A. Emmet*, in reply, contended, 1. That independent of any partnership, a part owner of a vessel has a right to be paid for all his advances for outfits and expenses, over and above his share.

2. That where a vessel and cargo are jointly owned, in one common adventure, it is an exception to the general law, as to vessels, and both vessel and cargo are partnership property.

3. Where the whole subject matter is thrown into one common fund, all the creditors must take subject to the general account of the partnership.

The case of *Doddington* v. *Hallet*, was a most solemn decision of Lord *Hardwicke*, and is acknowledged to be so by Lord *Eldon*, as appeared from a manuscript note in his possession. (2 *Ves. & Beame*, 243, 244.) Lord *Hardwicke* limited his decision, in that case, to a point which has never been overruled; namely, the liability of the vessel for the outfits and expenses. On the contrary, this equitable principle of Lord *H.* has been since uniformly adopted. Mr. *Abbott*, so far from denying it, lays down the law in conformity to the doctrine. In commenting on the case of *Smith* v. *De Silva*, (*Abbott on Ships*, 94. 3d ed.) he says, "It is true, indeed,

that as long as the ship continues to be employed by the same persons, no one of them can be entitled to partake of the profits, until all that is due, in respect to the part he holds in the ship, has been discharged." The decisions, subsequent to that of *Doddington* v. *Hallet,* may be said to limit the application of that case, to outfits and expenses, but the case does not appear to have gone beyond that; and there seems, therefore, to be no reason for doubting its correctness. The appellant does not wish to disturb the settled distinction between partnership property, and the property of tenants in common. There can be no doubt, that ships may become partnership property; and the evidence in the case shows, that the *Phœnix* was joint or partnership property. Lord *Eldon,* himself, marks the distinction between joint owners, and part owners. If the vessel was not considered as partnership property, it would be in the power of each owner to defeat their joint business.

Again; the appellant and *Stilwell,* being jointly concerned in the *Union* and the *Orris,* as well as the *Phœnix,* the whole was one connected partnership concern, as between them, in regard to these different adventures.

PLATT, J. It appears, that on the 27th of *December,* 1815, *Mumford,* and one *Samuel Stilwell,* were joint owners, in equal proportions, of the brig *Phœnix,* whereof *James Green* was master: that *Mumford* and *Stilwell,* as limited partners for that adventure, planned a voyage, and shipped a cargo at *New-York,* on board the brig, in their joint names, with instructions to the master to proceed to *Gibraltar,* and there to sell the cargo, in whole or part; to invest the proceeds in another cargo, and from thence to carry on a trading voyage, as the master might think proper, for the benefit of the owners: that the vessel and cargo, accordingly, proceeded to *Gibraltar;* thence to *Messina;* thence to the coast of *Brazil;* (at each of which places, the cargo was exchanged of in whole or in part;) and from thence to *Havana;* where the captain sold the whole of the cargo, which he had brought there. On the 27th of *April,* 1810, *Stilwell,* being insolvent, made an assignment to the respondents, in trust for his creditors, of all his share in that vessel and

IN ERROR.

ALBANY,
Nov. 1822.

MUMFORD
v.
NICOLL.

IN ERROR.
．．．．．．
ALBANY,
Nov. 1822.

MUMFORD
v.
NICOLL.

cargo, and all his estate of every kind and nature whatever, of which assignment his late partner (*Mumford*) had notice, in a few days thereafter.

On the 13th of *September*, 1816, (four and a half months after the assignment,) *Mumford* wrote to Captain *Green*, then at *Havana*, informing him of the failure of *Stilwell*, and requesting *Green* to sell the brig *Phœnix* there, and to invest the proceeds of the vessel, and former cargoes, in a new cargo at *Havana ;* and to ship such new cargo, consigned to him, (*Mumford*,) alone, at *New-York.* Captain *Green*, accordingly, complied with that request, and shipped the whole avails of the vessel, and of his former cargoes, in a new cargo of sugar and coffee, consigned to *Mumford*, at *New-York ;* which was received by *Mumford*, accordingly, on the 24th of *February*, 1817.

The respondents then, by virtue of the assignment, demanded *Stilwell's* half of the return cargo, so received by *Mumford*, which *Mumford* refused, on the ground, that *Stilwell* owed him a large balance on partnership account, in relation to that voyage ; and, also, in relation to other trading voyages, in which they had been jointly concerned ; claiming, that upon a full settlement of all their accounts, *Stilwell* would be largely indebted to him, and insisting on his right to retain the whole of the return cargo, as the means of his indemnity.

The only question was, on what principle *Mumford* ought to account to the assignees of *Stilwell ?* The Chancellor decreed, that the partnership extended to the *cargo*, and not to the brig *Phœnix :* that, in regard to the vessel, *Mumford* and *Stilwell* were *tenants in common*, and *not partners ;* and that *Mumford* should therefore account to the assignees, and be charged for one half the net proceeds of the vessel ; and for such balance, if any, as should appear to be due to *Stilwell* on a settlement of the partnership concerns, in relation to the freight and cargo, " after all just allowances between them, in respect to such joint concern, are made." The Chancellor excluded from the account to be taken, all claim for balances, if any, due to *Mumford*, on account of former trading voyages, in which it appears there had been limited partnerships between them of a like kind.

I am of opinion, that the decree is right. The vessel was owned by them, as *tenants in common*, beyond all question, before the voyage was planned. It is important to remark, that before the shipment at *New-York, Mumford* purchased of *Stilwell* one sixth of the vessel, so as to make their shares equal, and no entry appears of it in the partnership account; which, I think, denotes, that although they were partners in the adventure of the *cargo*, yet the vessel was not considered or treated as partnership property; and, according to my judgment, upon the evidence, the brig was not sent abroad to be sold. The instructions to Captain *Green,* to make sales, extended to the *cargo only;* and the sale of the vessel was in consequence of the private directions of *Mumford* alone, after he had notice of the assignment of *Stilwell's* share. The bill states, that *Stilwell* and *Mumford* were equally interested in the vessel and cargo : " that the cargo was shipped in their joint names, and the captain signed bills of lading for it, as the property of both ; and that the cargo was to be taken to *Gibraltar*, and there sold, if a market should offer ; and, if not, the vessel and cargo, or such parts of it as might not be then sold, and the investment of the proceeds of what might be sold, were to proceed to such other ports or places as, in the opinion of the master of the vessel, might be most advantageous for the joint owners ; and that the master was to carry on a trading voyage, with the vessel and cargo, in such way as he might think best, and most for the advantage of joint owners of the vessel and cargo."

The answer admits, " that the destination of the vessel, and the powers and instructions of captain, and the purposes of the voyage, were such, as in the bill are set forth."

Captain *Green* (in his answer to the third cross interrogatory) testifies, " that the owners of the brig *Phœnix* agreed to allow him commissions upon the sale and purchase of *cargoes*." But he no where pretends or intimates, that he was to be allowed commissions on the sale of the vessel, or that he had any instructions from the joint owners for the sale of the vessel. The sale of the vessel was not because she was *unseaworthy,* nor because she was not

IN ERROR.
.......
ALBANY,
Nov. 1822.

MUMFORD
v.
NICOLL.

wanted for the completion of the voyage. The captain purchased another vessel, at *Havana*, in lieu of the *Phœnix*, for the very purpose of bringing home the return cargo. The sale of the *Phœnix* was never contemplated until after Mr. *Mumford* was informed of the assignment made by *Stilwell*. Then, for the first time, instructions were given to sell the vessel. Before that private letter of *Mumford*, the understanding undoubtedly was, that the captain was to bring home the return cargo in the same vessel in which he carried the outward cargo; and the only object in changing the vessel seems to have been to commit the whole to the exclusive possession and control of *Mumford;* which he probably was advised could not be done, if the brig *Phœnix* came to *New-York*.

If the assignment had not been made, the *Phœnix* would have returned to *New-York*, and then the owners would have stood in the same relation as they originally did; that is, as *tenants in common*. It would not have entered the mind of either of them, that the vessel was subject to a *partnership lien*, after the joint adventure of the cargo had ended. Upon this sale of the entire vessel, by one of the tenants in common, the assignees of the other tenant in common had an option, to affirm the sale of their half, or not. They might have pursued the vessel, and maintained their right to a moiety of her; but were not obliged to do so. They have elected to affirm the sale; and have therefore a right to hold *Mumford* accountable for the net proceeds of that sale. Such election was perfectly consistent with their rights as tenants in common, and by no means subjected them to a settlement and liquidation of accounts, on principles of partnership. *Mumford* certainly could not gain such an advantage, by his own wrongful act.

A ship may undoubtedly be a subject of partnership, as an *instrument* of commerce, and also as an article for sale. But here the parties were joint owners previous to, and independent of their limited partnership in the cargo and trading voyage. The vessel *happening* to belong to the shippers in this case, was the mere *vehicle* of their merchandise, and was no otherwise connected with the partnership adventure than if it had been chartered from other ship-

IN ERROR.
........
ALBANY,
Nov. 1822.

MUMFORD
v.
NICOLL.

owners. It was properly likened, by the Chancellor, to a store-house, of which the partners were tenants in common.

But it is said, the decree is erroneous, in denying to *Mumford* an allowance for repairs on the vessel, preparatory to the voyage. If the decree be so, I consider it wrong; because, as between ship-owners, who are mere *tenants in common*, each has a *specific lien* for repairs. (*Abbott*, 96, (116.) 93, (113.) by *Story*.) I am persuaded, however, from the terms of the decretal order, that the Chancellor did not mean to exclude the charge for repairs. If the amount of credit to be given for repairs was exactly equal to half of the net proceeds of the vessel, it would make no difference whether the account was taken on the principle of a tenancy in common, or of a partnership; but the proof may show a great disparity. If the parties were *tenants in common* in the vessel, as I think they were, then *Mumford* is to be charged with one half of the net proceeds of the brig *Phœnix*, after deducting such proportion of the amount expended by him in repairs on that vessel, as shall be equal to the proportion which *Stilwell* owned in her, at the time of the repairs. If they were *partners* in the *vessel*, as well as the cargo; then *Mumford* is to be credited for *Stilwell's* proportion of the repairs put on the vessel by *Mumford*, and the whole proceeds of the vessel and cargo are to be accounted for on the principles of partnership; that is, he is to pay over to the assignees of *Stilwell* half the surplus, if any, after satisfying the just claims for debts, expenses, and advances, in the character of *partner*.

It does not appear that the claim for repairs, made by *Mumford*, on the vessel, of which he was joint owner, was ever distinctly presented to the mind of the Chancellor; and he has no where, in his opinion, discussed that point, nor even adverted to it. This omission is, to my mind, conclusive evidence that he was never called on to decide that point; and that it was considered a matter of ulterior discussion. The only question before him, in regard to the vessel, was, whether the account between the parties should be taken on the principles of partnership, or of a tenancy in common? It is the settled doctrine of this Court, that no point can be regarded as a proper subject of *appeal*,

IN ERROR.
........
ALBANY,
Nov. 1822.

MUMFORD
v.
NICOLL.

which has not been expressly litigated in the Court below. The decretal order is, that the account shall be taken on the footing that the parties were *tenants in common*, and not *partners* in the vessel, with the explanatory remark, "*after all just allowances between them in respect to such joint concern are made.*" This was a general direction to the master; and the question of repairs will arise, when "all just allowances" shall be considered. The proceeding was *interlocutory* merely; and every item of the master's report, when it comes in, will form a subject of exception before the Chancellor. As yet, he has expressed no opinion on that point.

I am also clearly of opinion, that the Chancellor was right in deciding that the account is not to be taken *subject to the unsettled balance*, (if any) due to the appellant, on former joint trading voyages in the ships *Union* and *Orris*. There is no evidence of a general partnership. *Mumford* and *Stilwell* each did business, as a merchant, on his own account, and those joint voyages were occasional adventures merely, and independent of their ordinary commercial business.

My opinion, therefore, is, that the decretal order of the Chancellor ought to be *affirmed*.

WOODWORTH, J. The appellant, and *Samuel Stilwell*, as appears by the pleadings and proofs, although not general partners, had been concerned as partners in voyages made by certain ships, called the *Union* and the *Orris*, and the shipments made in those vessels, on their joint account; they also were owners of the vessels. It does not appear when this joint concern commenced, but it does appear that it was still in existence, and not brought to a close, on the 16th of *January*, 1816; for, on that day, an account was exhibited by *Stilwell*, and settled by the appellant, in which various charges in relation to that concern are contained; all of which are dated in 1815. In the account (exhibit H) of the assignees of *Stilwell* against the appellant, there is a charge, *November* 17, 1815, for one half of a premium paid for insurance of the ship *Union* from *Gibraltar* to *New-York*; and under date of *February* 27, 1816, the

assignees make various charges against the appellant for
articles received by the ships *Union* and *Orris*.

By the appellant's account (exhibit S) it appears, that on
the 19th of *April*, 1816, the appellant purchased of *Stil-
well* one half of the ship *Orris*; and that on the 28th of
*May*, 1816, one half of the ship *Union* was purchased at
auction by the appellant. This account was seen by *Van-
dewater*, one of the respondents; and he was satisfied with
the correctness of it. It is proved by several witnesses,
that the appellant and *Stilwell* were jointly concerned in
those vessels, and their cargoes and voyages. From the
preceding statement, it is evident that this partnership in
the vessels and cargoes continued, and had not terminated,
when, in *December*, 1815, the appellant and *Stilwell* com-
menced another joint concern in the *Phœnix*, out of which
has arisen the present controversy. This does not appear
to be a case where the several owners or tenants in common
let the vessel on charter party, or had in view the mere
earnings or profits arising from freight; but where they
contemplated a trading voyage, in which both were equally
concerned. One principal object connected with that voy-
age was, that both vessel and cargo should be sold, and
new investments be made for the benefit of the concern.
This fact does not seem to be a point in dispute; the ques-
tion, then, is, admitting that the owners of a vessel are to
be regarded on the nice distinction of a tenancy in com-
mon, whether, by the act of the parties, the vessel was not
made, in respect to this concern, as much a part and parcel
of the partnership property as the cargo which she contain-
ed? If it was, it may not be material to decide on the
question, whether a part owner of a vessel, when there is
no partnership, general or special, can assign his share with-
out reference to any equitable lien on the vessel? No pro-
position seems to be better settled, than that where there is
a partnership, the partner in advance has a lien on the part-
nership property for any balance that may be due to him
on the partnership account. The law will not permit a
separate creditor to receive more than the partner is enti-
tled to, in whose place he stands; he can only claim the
share of his debtor after the other partner is satisfied, and

IN ERROR.
. . . . . . .
ALBANY,
Nov. 1822.

MUMFORD
v.
NICOLL.

after all just debts, expenses, and advances, are allowed. This is the settled rule in relation to partnership property. (1 *Vesey,* 239. *Cowper,* 445. 4 *Vesey,* 396. 17 *Vesey,* 193.) In the application of the rule, there is not a uniform current of authority. In *Doddington* v. *Hallet,* (1 *Vesey,* 497.) the facts were these : *Hall,* the defendant's intestate, entered into an agreement with the plaintiffs, by which he was authorized to contract for the building of a ship for them, for the service of the *East India Company,* and for the fitting out, manning, and victualling her. *Hall* dying intestate, the part owners filed a bill against his representatives, that they might have a specific lien upon what should be due to *Hall* for his share, for the money the plaintiffs had paid to the tradesmen, in fitting out the ship, and that the plaintiffs had a lien on the partnership estate, in respect of the balance that should come out due to him on the partnership account. Lord *Hardwicke* determined the broad question, " that the ship may be the subject of partnership as well as any thing else ; the use and earnings thereof being a proper subject of trade, and the letting a ship to freight, as much a trade as any other ; that it was a partnership among the parties, and the ship was a part of the subject thereof, it being their method of trading." The general doctrine seemed not to be contested. Lord *Hardwicke* observed, " that the defendant's counsel had been forced to resort to the case of an assignment of a share for valuable consideration, which was not then before the Court, and must be governed by the course of trade ; that if it stood on general equity, he was of opinion, that if a purchaser have notice of the partnership, he would be subject to it. If he had not notice, it would be a strong case for the purchaser, because he would have gained the legal interest ; but if, by the course of trade, it is otherwise, that will prevail, and is to govern mercantile matters."

The doctrine, then, is, that the ship is to be considered as partnership property, and liable for equitable liens, even against a purchaser for valuable consideration with notice, and, perhaps, without notice, if so was the course of trade. The case before the Court is not that of a purchaser for valuable consideration, but where the assignees stand in

the place of *Stilwell,* and have the same equity as if he had been a party; consequently, if this rule be correct, it is decisive on this point. The justice of applying it to a case where there is no purchaser for valuable consideration without notice, seems to be founded on the purest equity, for it requires no more than that the ship be chargeable with all debts, for which either owner was liable on account of the ship. I do not perceive any difficulty in applying this equitable lien, although the ship be considered as standing upon the distinction of a tenancy in common. *Abbott* (*on Ships,* 103.) observes, " the several part owners of a ship are tenants in common with each other of their respective shares; each has a distinct, although undivided interest in the whole, and upon the death of any one, his share goes to his own personal representatives, and does not accrue to the others by survivorship." Be it so; it is perfectly consistent with the claim in equity, that as between the several owners, the distinct individual share shall be holden until all debts on account of the ship are discharged; this is the substance of the rule laid down by Lord *Hardwicke.* I have not discovered that this case has been overruled or controverted, until the case *Ex parte Young,* (2 *Ves. & Beames,* 242.) It is true, Lord *Eldon* adopted a different rule, and held that the bankrupt's share passed to his creditors, there being no lien in favour of other partners, in respect of their disbursement and liabilities. The succeeding *English* cases have followed the last rule, and are considered, at present, as settling the law on this question in that country. It may, I think, be fairly presumed, that the rule laid down by Lord *Hardwicke* had been acquiesced in, if it cannot be shown to have been drawn in question for more than half a century. How can it be safely said, that this case has never been acted upon during so long a period? The community may have considered the rule settled, and applied it to cases that may have arisen. That such cases must have been frequent, in a country so highly commercial as *England,* cannot well be doubted; that the rule should not have been assailed for such a length of time, is strong evidence that the principle on which it was founded, had the sanction of justice and law. So far, then, we may conclude

that it has been acted on.   That it has not been recognised by any subsequent decision in an analogous case, will be admitted ; it remained, however, an authority, until overruled in the late cases.   Were it indispensable now to decide between these conflicting opinions, I should be disposed to subscribe to the opinion of Lord *Hardwicke*, as laid down in *Doddington* v. *Hallet*.

But, the appellant is not driven to the necessity of supporting Lord *Hardwicke*, for the question here may be determined on principles that will not be disputed.   It was admitted, on the argument, and cannot well be denied, that if the appellant and *Stilwell* had been general partners in trade, the doctrine would be sound.   In this case, if the owners of the ship, by agreement or arrangement, have made it a part of the partnership property, with which they were conducting their operations, a lien necessarily arises to make it liable for partnership debts and advances.   It is true, the appellant and *Stilwell* were tenants in common, and part owners of the ship ; and if no farther connexion appeared, the question would be very different from the one which arises in this case.   It is admitted, that here the parties were partners in the cargo and voyage ; is it not equally clear, they were so in the vessel ?   It is not the case of a vessel being chartered or earning freight, *eo nomine ;* but the vessel is to be sold, as well as the cargo ; the avails of both are to be invested in such manner, as the master may consider most advantageous.   This has been carried into effect ; the ship and outward bound cargo were sold, and equally applied in procuring a return cargo, and in carrying on the trade ; they were both inseparably connected with this object.   Such was the original intention, which was steadily kept in view, and terminated in the shipment of the goods by the brig *Newton*, which came to the appellant's hands.

After all this, to say that, in respect to the ship, the appellant and *Stilwell* stand as tenants in common and part owners merely, and that the ship formed no part of the partnership property, is to my mind a proposition not founded in fact.   If I am correct in this conclusion, it follows, on acknowledged principles, not depending on the authority

IN ERROR.
° ° ° ° ° ° °

ALBANY,
Nov. 1822.

MUMFORD
v.
NICOLL.

of *Doddington* v. *Hallet*, that the ship, equally with the cargo, is liable for all debts for which either owner is chargeable on account of the ship.

The next question is, whether the proceeds of the brig *Phœnix* and cargo, or either of them, are subject to any balance that may be due to the appellant in respect to the ships *Union* and *Orris*, and the voyages by those vessels on their joint account? The answer to this question will depend on the nature and extent of the connexion or partnership that existed between the appellant and *Stilwell*. It is not pretended they were general partners in trade, nor is it necessary they should be, in order to give the appellant the right now claimed ; but it is necessary to show, that the connexion, or partnership, that existed in the *Union* and *Orris*, continued, and included the concern in the cargo and voyage of the *Phœnix* : in short, that the several voyages and adventures, taken together, formed a continued partnership transaction.

The partnership between the appellant and *Stilwell* was limited ; it is not pretended that it extended beyond the vessels and cargoes just mentioned. The partnership business was to be carried on in this channel. From this source, the profits, if any, were to be derived. No specific agreement, as to the nature and extent of the partnership, is made out in proof; what they were, must be collected from the acts of the parties. We find them engaged jointly in vessels, cargoes, and trading voyages, and in no other business. When they commenced does not appear ; but it was some time before the *Phœnix* was sent out, that the appellant and *Stilwell* had been concerned jointly in the vessels, cargoes, voyages, and adventures of the ships *Union* and *Orris*. That concern was not closed when the *Phœnix* sailed, as appears by the exhibits in the case ; indeed, the ships were not sold until after that period. Now, I admit, that if the facts before us show satisfactorily, that the appellant and *Stilwell* intended that three special or limited partnerships should exist, that is to say, one in respect to each vessel and voyage, then clearly the appellant cannot hold the avails of the *Phœnix* and cargo, to apply them in discharge of any balance that may be due to him, arising out of the concern in either of the

IN ERROR.
.......
ALBANY,
Nov. 1822.
⌣⌢⌣⌢⌣⌢⌣
MUMFORD
v.
NICOLL.

other vessels. But is there evidence that any such thing was contemplated ? I have not been able to discover it. We find the appellant and *Stilwell* commencing and carrying on business, in three different vessels, at different times ; but it was a continued business, and did not close until *Stilwell* made an assignment of his property. These facts prove one transaction ; the business in each vessel was the same ; the objects the parties had in view were the same ; the concern in the *Union* and *Orris* was not closed ; their interests were blended, and extended equally to the three vessels. Such facts will not allow me, against the intrinsic evidence in the case, to say that the appellant and *Stilwell* ever contemplated, that the concern in each vessel should form a distinct partnership transaction. For this they could have no motive or inducement ; the profits would depend on winding up the whole concern, not the successful termination of a particular voyage ; and can it be imagined, that either party intended to put it in the power or control of the other, to withdraw or assign, or transfer, the avails of one voyage, which were necessary to make up the losses, or to discharge the claims that existed in relation to another ? It seems to me they must have intended directly the reverse. I consider these parties as commencing the business of a limited partnership in vessels, cargoes, and trading voyages. After having sent out one vessel and cargo, they proceed to a second, and then to a third. To say that each vessel and cargo is to be considered as being the subject of a distinct and separate partnership, rather than parts and parcels of the same transaction, does not appear to me warranted by the evidence. The appellant cannot be compelled to part with the avails of the *Phœnix* and cargo, until an account shall be taken between him and the assignees of *Stilwell*, in respect to the several vessels, voyages, and cargoes ; inasmuch, as they formed but one partnership concern, and, consequently, the appellant has a lien on the partnership property in his hands, to satisfy the balance that may be found due to him in respect to the unsettled concerns of the *Union*, the *Orris*, and the *Phœnix*, including the moneys which the appellant has been compelled to pay

to certain creditors, after having advanced and allowed the same previously to *Stilwell*.

I am, therefore, of opinion, that the decree of his honour the Chancellor be reversed ; and that a decree be entered, corresponding with the principles I have stated.

IN ERROR.
.......
ALBANY,
Nov. 1822.
MUMFORD
v.
NICOLL.

SPENCER, Ch. J. The questions in this case are, 1. Whether the appellant had such a lien on the proceeds of the sale of the brig *Phœnix*, as to be entitled to hold those proceeds, subject to the settlement of the account between him and *Stilwell*, for the payments made by the appellant, on account of that voyage, and the charges in relation to the vessel and her outfit, against the respondents' claim, as assignees of *Stilwell* ?

2. Whether the appellant is, in like manner, entitled to hold the proceeds of the sale of the *Phœnix*, to satisfy any balance which may be due him from *Stilwell* upon the unsettled concerns of the *Union* and the *Orris* ?

The decree appealed from, considers the appellant, and *Stilwell*, to have been owners as tenants in common, in equal moieties, of the brig *Phœnix*, and that they were special partners, and had a joint interest in the cargo and voyage; and that that partnership was one entire and distinct concern, unconnected with any former partnership, in any former voyage, in any other vessel ; and it was decreed, that a master should state an account between the respondents, as assignees of *Stilwell*, and the appellant, in respect to the brig *Phœnix*, and her cargo and voyage, and that the appellant be charged with a moiety of the net proceeds of the brig sold at *Havana*, and with a moiety of the net proceeds of the freight and cargo of the brig on the voyage, or so much, if any, of the net proceeds of the moiety of the freight and cargo as shall appear due to the respondents, as such assignees, after deducting the balance, if any, found due to the appellant from *Stilwell*, on an account to be taken and stated between them, in respect to their joint concern in the said freight, and cargo, and adventure, after all just allowances between them, in respect to such joint concern, are made. In other words, the decree considers the appellant, and *Stilwell*, as joint owners and partners, in regard to

IN ERROR.
•••••••
ALBANY,
Nov. 1822.

MUMFORD
v.
NICOLL.

the cargo and freight, and directs the amount to be stated on that principle, confining that, however, to the particular voyage and concern of the brig *Phœnix ;* and it considers them tenants in common of the vessel itself, and renders the appellant liable for the net proceeds of the sale of the brig, denying to the appellant a right to reimburse himself out of those proceeds, however the accounts between the appellant and *Stilwell* may stand, either as regards that voyage, or other concerns and voyages in other vessels.

I put out of consideration, at once, the inquiry whether the appellant knew of the assignment to the respondents, of *Stilwell's* interest in the brig, when he requested Captain *Green* to consign to him, the proceeds of the brig and cargo, because there is no complaint of the sale of the brig, which was made in pursuance of instructions originally given, and which never were revoked; and because the appellants' right depends on legal principles, and not upon the circumstance that he has those proceeds in his possession. The question simply is, has he a right to hold them subject to the inquiry into the general balance of his account, either in relation to that particular adventure, or in relation to other and similar adventures. In short, under the facts and circumstances of this case, are the proceeds of the vessel to be regarded as partnership property, either as regards the voyage of the *Phœnix*, or other and similar voyages in other vessels ?

I understand the Chancellor as admitting, that the case of *Doddington* v. *Hallet*, (1 *Ves.* senr. 497.) is directly opposed to the decision he has made, and that he considers that case as not only not having been acted upon, but as overruled by the cases to which he has referred. We will see what Lord *Hardwicke* decided in that case. The bill was founded on an agreement between the plaintiffs and one *Hall*, authorizing the latter to contract for the building of a ship, and for fitting out, managing and victualling, her, with an agreement to pay proportional shares, according to their interests. The part owners claimed, against *Hall's* representatives, a specific lien, upon what was due to *Hall* for his share, on account of the money the plaintiffs had paid to the tradesmen, in fitting, &c. the ship, and that the administrators should not run away with it as part of the general

assets for all the creditors. Lord *Hardwicke*, after premising that the case stood as though *Hall* himself was before the Court, no one having a specific lien on *Hall's* share in the ship, went on to say, that it must be admitted, that a ship might be a subject of partnership as well as any thing else, the use and earnings thereof being a proper subject of trade. He said, it was a partnership among them, and the ship itself to be part of the subject thereof, which was to be let to freight to the company, it being their method of trading; the foundation of this partnership stock was the ship itself, which must be employed, and the earnings and profits to arise. That, undoubtedly, all the persons subject to the agreement are liable *in solido*, to the tradesmen who fitted it out, and the agreement for the proportional shares is as between themselves, which is the case of all partnerships. He said, if it had been agreed that a brew-house should be part of the partnership stock, (which often happened,) the case of the brew-house being used in the partnership trade, if workmen do work in the brew-house, every partner would be liable to that, and that brewhouse must be brought into the partnership account; and if more was due to one partner than another, all the share of the partnership stock, consisting of the lease of the brewhouse, as well as the other effects, are liable to that account. He went on to observe, that if the share of one partner had been assigned, if it stood on the head of general equity, he should be of opinion, that if the purchaser had notice of the partnership, he would be subject to it; and he decreed for the plaintiffs.

Lord *Hardwicke* perfectly understood the distinction between a tenancy in common, such as owners of different shares in a ship have among themselves, and a joint tenancy, as between partners of the goods and stock in trade. He meant to decide, and did decide, that a subject which ordinarily may be held as a tenancy in common, may, by the acts of the parties, become to be held in joint tenancy. And the facts of the agreement to build the ship at their joint expense, in proportion to their shares, and the agreement to fit her out, manage and victual her, for the service of the *East India Company*, formed, in his judgment, such a

IN ERROR.
· · · · · · ·
ALBANY,
Nov. 1822.
MUMFORD.
v.
NICOLL.

IN ERROR.

ALBANY,
Nov. 1822.

MUMFORD
v.
NICOLL.

community of interest, as to constitute that a partnership transaction, in relation to those subjects, and thus a specific lien was acquired by those who contributed more than their shares, against the share of the one who contributed less than his proportion.

This case derives strong confirmation from the case of *Smith* v. *De Silva and others*, (*Cowp.* 469.) in which it was decided, upon an issue out of Chancery, that the interest of part owners in a ship, and in the profits and loss of an adventure, undertaken by their mutual consent, is not affected by the bankruptcy of one of them taking place after the commencement of the voyage, although he has not paid his full share of the outfit. Lord *Mansfield*, in giving the opinion of the Court, held, that if the other partners had been obliged to discharge the amount of the notes, which remained unpaid at the time of the bankruptcy, the assignees must have allowed the other partners, the full sum paid for the bankrupt, and would have come against them only for the balance due to him, if any. Mr. *Abbott*, in commenting upon this case, says, it seems to have been considered, that part owners of a ship might have a lien on each other's shares of a ship, as partners in trade have on each other's shares of their merchandise. And in the third edition of his *Treatise*, p. 94, he says, " It is true, indeed, that as long as the ship continues to be employed by the same persons, no one of them can be entitled to partake of the profits, until all that is due, in respect to the part he holds in the ship, has been discharged." And again, after citing the case of *Doddington* v *Hallet*, without a word of disapprobation, in p. 96, he says, " This usage, or course of trade, I apprehend to be, to charge the assignee or purchaser in account for the outfit, and other expenses incurred, in respect of the voyage of which he is entitled, in consequence of his purchase, to share the profits, which can only be the voyage in prosecution at the time of the purchase; but not to carry back the charge, as against him, to the expense of any antecedent adventure, from which he can derive no profit."

The cases cited by the Chancellor, and on which he has relied, to establish a contrary doctrine, do, undoubtedly, strongly impugn the authority of *Doddington* v. *Hallet*,

though I must be allowed to say, that the case *Ex parte Parry*, (5 *Vesey*, jr. 575.) is very distinguishable, and does not oppose Lord *Hardwicke's* opinion. It is, however, to be observed, that all the cases on which the decree is founded, are long since our revolution, and have no authoritative influence here; and I am not disposed to overrule Lord *Hardwicke*, supported, as I think he is, by Lord *Mansfield*, and the other Judges who sat with him, in a case, in which justice and right require him to be supported. The statement of this case shows, that it is much stronger for the appellant than the case before Lord *Hardwicke*. The vessel here was owned in equal shares, and was fitted out, or to be fitted out on a circuitous trading voyage, at the joint expense of the parties. It was, therefore, a limited and special partnership, not only as to the cargo, freight, and the profits thereon, but as to the fitting out of the vessel. The appellant, after paying his proportion of mechanics' bills and shipchandlery, under the assurance they had been paid by *Stilwell*, is called upon and compelled to pay them over again. The respondents are assignees for prior debts, and are chargeable with notice, or, at all events, have received the subject, liable to all equities between the appellant and *Stilwell*. Can it be just and equitable to deprive the appellant of his right to reimburse himself for the moneys he has been compelled to pay, as part owner, for the default of *Stilwell*, in whose shoes the respondents stand? I answer, unhesitatingly, that it would be inequitable and unjust to do so.

I must not be supposed to overrule the distinction between partners in goods and merchandise, and part owners of a ship. The former are joint tenants, and the latter are, generally speaking, tenants in common; and one cannot sell the share of the other. But, I mean to say, that part owners of a ship may, under the facts and circumstances of this case, become partners as regards the proceeds of the ship; and if they are to be so regarded, the right of one to retain the proceeds, until he is paid what he has advanced beyond his proportion, is unquestionable.

I have no idea that, in taking the account, any reference is to be had to other adventures in other vessels, which the

IN ERROR.
.......
ALBANY,
Nov. 1822.

MUMFORD
v.
NICOLL.

IN ERROR.
.......
ALBANY,
Nov. 1822.

MUMFORD
v.
NICOLL.

appellant and *Stilwell* may have carried on. No general partnership existed between them, and each adventure created a partnership by itself, which terminated with the particular adventure. I do not mean to speak definitely of the other voyages, but I wish to be understood as saying, that, in this case, the accounts of the *Union* and *Orris* are not to be taken into consideration. My conclusion is, that the decree appealed from be reversed, with directions, that in the reference to the master, he shall be directed to allow the appellant such sums of money, out of the proceeds of the sale of the *Phœnix*, as he may have paid more than his proportion for the repairs done to the *Phœnix* in fitting her for the voyage mentioned in the pleadings; and, also, such sums as the appellant may have paid more than his proportion in the outfit of the vessel, in shipchandlery, stores, &c.

AUSTIN, LEFFERTS, and MILES, Senators, concurred in the opinion of Mr. Justice PLATT.

SHEPHERD, Senator, concurred with Mr. Justice WOOD-WORTH.

* *Nov. 13th.*
For affirming
4.  For Re-
versing 24.

A majority of the Senators* concurred in the opinion of Mr. Chief Justice SPENCER, that the decree of the Chancellor ought to be reversed in part, and modified; and it was thereupon " ORDERED, ADJUDGED, and DECREED, that the decree of the Court of Chancery be reversed; and that it be referred to one of the masters of the said Court to take and state an account, and make report thereon between the respondents, as assignees of *Samuel Stilwell,* and the appellant, in respect to the brig *Phœnix,* and her cargo and voyages, and the net proceeds thereof, on the footing of a special partnership in such brig, cargo, and voyage, and the proceeds thereof; and that on such account, the master make all just allowances for any moneys the appellant may have paid more than his proportion for repairs to the *Phœnix,* in fitting her for the voyage mentioned in the pleadings in the Court of Chancery, and, also, for any moneys the appellant may have paid more than his proportion in the outfit of the said vessel, in shipchandlery, or other-

wise, excluding from such accounts any former or other partnership, in any former or other voyage, in any other vessel or vessels. That the question of costs in the Court of Chancery, and all other questions, be reserved until the coming in of such report; and that the record and proceedings be remitted to that Court, to the end that this decree may be carried into execution."