DUNHAM & DIMON v. JARVIS AND OTHERS.

Where a ship has been built under a special agreement, whereby one of the owners was to be master, others to be ship's husbands, and the vessel to be employed on joint account as a regular packet between New York and Glasgow, it is a partnership both as to ship and freight.

In such case it is not a matter of right of either party, on a dissolution, to have a receiver appointed, or an injunction, but only where they may be necessary for the protection of the rights of parties; and it may be proper to deny both where, by taking adequate security, the rights of parties may be fully protected, and the expense of a receivership be avoided.

If, however, the ship is owned in common, and not in partnership, it is not a matter of right of one of the owners, on a disagreement among the owners as to the manner of employing her, to have an injunction restraining her being employed at all. In such case, it will be proper for this court to adopt the admiralty rule, and allow the majority of the owners to employ the vessel at their own risk, pending a suit, on giving security to return the vessel into the jurisdiction of the court, to abide the judgment of the court, or so to return the present value of the interest of the minority. On a motion for an injunction in such case, Held, that it is not necessary to pass on the question whether the minority of the owners can participate in the profits of such intermediate employment of the vessel. That ought to be reserved for the final hearing, and, therefore, the security ought also to be to account for such share of profits, in case, on final judgment, they shall be adjudged to be entitled thereto.

DUNHAM & DIMON, partners in trade, entered into a contract with the defendants to build a ship to run as a regular packet between New York and Glasgow, to be built under the superintendence of Churchill, one of the defendants; and, when finished, to be commanded by him, under the agency of D. & D.—D. & D. owning one-quarter, and the other three-quarters being owned by the defendants, in shares of one-sixteenth, or one-eighth, each. After the ship was built, and had run some time as a regular packet, some disagreement

19—vol. 2.

arose between D. & D., on one side, and Churchill and the other owners on the other side, which resulted in the majority of the owners depriving the plaintiffs of their agency, and transferring it to another person, but continuing the vessel on the same trade, and under the same master.

D. & D. then filed their complaint against the other owners, claiming that they had a lien on the freight carried on the last voyage, for their advances on account of the ship, and praying an injunction restraining the defendants from collecting it; praying that the ship might be sold, and the proceeds distributed among the owners; and, in the meantime, for an injunction restraining the defendants from sailing the vessel.

A preliminary injunction being granted, a motion was made at Special Term to set it aside. An order was granted setting it aside, on condition that the defendants should give a bond, with security, in the penalty of $10,000, conditioned to pay D. & D. whatever sum might be found due to them as ship's husbands; and a farther bond, with security, in the penalty of $25,000, conditioned for the safe return of the ship within the jurisdiction of this court, to abide its judgment; or, in case she was not returned, to pay to the plaintiffs the present value of their interest. And in case such bond was given, the defendants were to be at liberty to employ the ship at their own risk, and expense, and for their own benefit, to the exclusion of the plaintiffs, pending the suit.

From that order D. & D. appealed.

*Doyle and F. B. Cutting*, for plaintiffs.

*W. M. Evarts, contra.*

*Edmonds, P. J.:* As to the freight, these parties were partners, and liable to the rule which governs this court in all cases where the partners do not agree, but one ousts the other. In such cases a receiver will be appointed, where that is necessary to the protection of the interest of the parties. Here no

receivership was necessary, so long as the defendants would give, as they were required, adequate security to account for the freight. That they have done, and the plaintiffs are just as much protected as if the freight had been brought into court and put into the hands of its officer. That being the case, there was no occasion to subject these parties to the expense of a receivership. The plaintiffs have no absolute right to a receivership. They have a right to have their interest protected against the aggressions of their partners. That has been amply done as to the freight, and I can see no cause they have to complain on that account.

As to the vessel, the matter stands in a different light. A ship, as well as a house and lot, may be owned in partnership, as well as in common; and I was inclined, on the hearing below, to regard the contract between these parties as a partnership, and I am not certain now that it ought not so to be regarded. But, looking at the matter not as a partnership, but as a tenancy in common only of the vessel, still I did not, nor do I now, discover any absolute right the plaintiffs have to restrain the other owners from any charge over, or use of, the ship pending the dispute between them. It was not necessary for the interest of parties, or of commerce, that the vessel should lie idle pending the suit; and she must either do so or be used by the plaintiffs, if their claim is listened to. For, as to the court's running the vessel by and through its receiver, that was out of the question; and I could discern no better disposition to make of her than to apply the admiralty rule in cases where joint owners disagree as to the use—that is, to allow the majority owners to use her at their own risk, on giving security for her return, to abide the judgment of the court, or for the return, at least, of the plaintiffs' present interest in her. In all this, the plaintiffs are still fully protected as to all their interest, except only as to their share of the profits of running the vessel pending the dispute.

As to that, it must be borne in mind that, at the Special Term, they did not ask to participate in those profits while the vessel should be used by the other owners, nor did they

ask for leave to use her themselves. They demanded that she should be sold on a final decree, and, in the meantime, that the other owners should be restrained from using her. Such is the prayer of their complaint, and such was alone the consideration presented on the argument below. This did not appear to be equitable; for it seemed to me to be an attempt to use a provisional remedy for the purpose of enforcing such judgment as they deemed themselves entitled to before the court had an opportunity of determining whether they were entitled to it or not. Now, however, on this appeal, the case for the plaintiffs is presented in a very different aspect. Now, they complain that their share of the profits of using the vessel are, in fact, confiscated pending the litigation; and claim that they have a right, under the articles of agreement, to run the vessel themselves, in conformity with its stipulations. I doubt their right thus to raise points on their appeal that were not raised below. It is a violation of all rule, and of the good faith that is due, in such cases, alike to the court and to the parties. On neither of the points now raised did I pass any judgment below, and for the simple reason that they were not raised before me then. This ought to be a sufficient answer to the appeal.

But as we have power to modify, as well as to reverse or affirm, the order of the Special Term, it will be as well to look into this new view of the case, and see whether in this aspect any injustice has been done. As to the confiscation of the plaintiffs' share of the profit, as it is called, pending the litigation, I can only say that it was not necessary for the purposes of the motion below to decide that the plaintiffs should not share in the profits of using the vessel, while she was run solely at the risk of the defendants, who were bound ultimately to bring back, into the jurisdiction of the court, the vessel herself, or the plaintiffs' present interest in her. That might have been properly left for decision on the final judgment. If the vessel herself should be brought back, the defendants' shares in her would be subject to the judgment of the court, to answer for any share of profits which plaintiffs

Dunham & Dimon v. Jarvis and others.

might be entitled to. But in case only the value of plaintiffs' present interest be brought back, I perceive the bond makes no provision for any such profits. That might easily have been made if the plaintiffs had asked for it, by inserting a proper clause in the condition of the bond, and even now the bond may be amended by inserting such a clause, in case the court shall not deem it advisable to adopt the admiralty rule in full, and refuse the plaintiffs any share in the profits while the vessel is run at the risk of the other parties, or, at least, to sanction it so far as to refuse to require the defendants to give security for that, leaving the plaintiffs to their appropriate remedy in that respect in the end.

The other claim of the plaintiffs themselves, to run the vessel in the particular trade for which she was built, because it was so provided in the original agreement, is liable to many objections. That agreement is clearly, in part, at least, a partnership agreement, and liable to the application of the equity practice in cases of disagreement among partners. How could such a decree as the plaintiffs now ask, be enforced? One of the owners was to be master, another ship's husband, and the others to share in the risk and expense of running the vessel as a regular packet between New York and Glasgow. If any of them refused to perform his part, could the court compel him; or, if the other owners were dissatisfied with the master, could he compel them to let him sail her as master? This sort of disagreement might put an end to the connection, but I know of no principle which would require this court to compel its continuance, and, least of all, that would allow the master, in defiance of the remonstrance of all the other owners, to sail the vessel and carry on the business. Yet, if the principle contended for be right, this would be the result. Suppose Churchill refuses to go as master while plaintiffs remain the agents, and the plaintiffs refuse to act as agents while Churchill should be master, how is the court preliminarily to determine between them — and, above all, on what principle would the court be justified in taking the vessel out of the hands of the other owners, and putting

her entirely under the control of either one of these contend-
ing parties? Yet that may be done if the doctrine advanced
by the plaintiffs be sound. If it might, on what ground
should plaintiffs be favored more than the master — and why
might not the master be put into the entire control as well as
the agents? It would be vain to say that that would depend
upon which is in the wrong, or nearest to being in the right.
That is a question which can be solved only in the final judg-
ment; and the inquiry now is, what is to be done in the
meantime? I confess that, view the case as I may, I can see
no better rule to adopt for such intermediate period, than that
which is established in admiralty, and which, in the court
below, I borrowed for the purpose of doing the best justice I
could between these parties, while I can readily perceive how
a great deal of injustice may be done by adopting either of
the courses which the plaintiffs have successively pressed upon
our consideration — and that is, either to lay the ship up in
idleness until the suit shall be ended, or allow the plaintiffs, a
small minority of the owners, to run her in defiance of the
will of a large majority.

Such is the light in which this case strikes me, if the par-
ties are to be considered as tenants in common in the ship,
and not as partners. But it seems to me that they are rather
to be regarded as partners. In *Doddington* v. *Hallett* (1 Ves.
Sen. 497), there was a contract for building a ship for the
service of the East India company, and for fitting her out,
managing and victualling her. This was held to be a partner-
ship as to the ship. I am aware that in *Ex parte Young* (2
Ves. & Bea. 242), Lord ELDON overruled that case; and that
our chancellor, in *Nicoll* v. *Mumford* (4 Johns. Ch. R. 525),
regarded it as a case which had never had effect, and had
been authoritatively exploded. But when this last case was
before our Court for the Correction of Errors, on appeal from
the chancellor's decision in 20 J. R. 635, Chief Justice SPEN-
CER, who delivered the prevailing opinion, expressly reasserted
the doctrine of Lord HARDWICKE, in 1 Ves. Sen., and as it
had been held by Lord MANSFIELD, in *Smith* v. *De Sylva*

(Cowp. 469), and applied it to a case where the parties were joint owners of ship and cargo, which they had sent on a trading voyage, on joint account. He held that they were partners, and on that ground our court of last resort decided that case. So that I am constrained to regard that as the settled rule in this State. Upon that principle this was a partnership between these parties as to vessel as well as freight. In such case it is not usual or proper to grant an injunction and follow it up, as it must be, by a receivership of the partnership property, unless it should be necessary for the protection of the rights of parties against some threatened or apprehended abuse. For such protection, the bond required by the order of the Special Term was amply sufficient. No abuse has been suggested that could not be amply compensated in damages, and as amply covered by the security exacted.

In every aspect, then, of the case, the order below was unexceptionable, except as it attempted to pass on the question, whether the plaintiffs would be entitled to share in the profits of employing the vessel, pending the suit. That ought to have been avoided; and, to do that, the bond for $25,000 must be amended, by inserting a condition to account for, and pay over, the plaintiffs' share of such profits, if on the final judgment it shall be determined that they are entitled to any. Unless such amended bond be filed in twenty days, the injunction will be revived. The costs of this appeal to abide the event of the suit.

Order of Special Term affirmed, with a modification as to profits. The costs of the appeal to abide the event.