Chabb, J.
delivered the opinion of the Court. The defendants, John and George Dougherty, became partners in trade and merchandise in 1815 ; they were embarrassed in 1819, and on the 1st of January, 1820, were insolvent to the amount of $8,000 or $10,000 beyond their means of payment. The firm owed large debts to creditors in the Atlantic cities; and to the branch of the Nashville Bank at Winchester about $ 12,000. The defendants, Miller and the-Woodses, were their accommodation indorsers for the latter sum to the bank. John Dougherty was individually indebted to the complainant, James White, about $ 6,000. In the latter part of the year 1819 John and George Dougherty sold goods to Plerbert and Kyle, of Huntsville, to the value of about $ 11,000, and took their notes for the *623 amount. These they pledged to Miller for the security of himself and the Woodses. Whether that was a permanent or a temporary pledge is one question of fact disputed by the parties.
The Doughertys also assigned to their indorsers, Miller and others, for their additional security, stock in the bank to the nominal amount of about $ 6,000. On the 8th day of January, 1820, John Dougherty mortgaged to the indorsers, for their security, two town lots in Winchester, his individual property.
On the 20th of the same month complainant and John Dougherty sigrled in Winchester a memorandum in the following words: “ I am willing to wait for the amount of my debt from Major Dougherty five years, carrying interest from the date. Major Dougherty proposes to include my debt in a mortgage with T. Miller, Archibald Woods, and W. Woods, who hold debts on Herbert and Kyle to the amount of $ 11,050, the real property in Winchester, [318] and the stock in the Winchester Bank, out of which property they are bound to pay $ 12,000, the balance of the above property will then be for the security of my debt; this 20th January, 1820.
“James White.
“John DotjgheRty.”
The complainant then left Winchester, and the next day John Dougherty executed and delivered to complainant’s agent, who received it, a deed of mortgage for the same two lots which had been mortgaged to Miller and others, with three-other lots in the same town. The deed describes the two lots as “ being the same specified in a mortgage executed for the same to Archibald Woods, William Woods, and Thomas Miller, dated on the 8th instant.”
The complainant affirms that Miller had notice soon afterwards of the agreement evidenced by the above memorandum, and of the lien he says he acquired by means of it. The defendants deny that they had any notice until after the notes were disposed of as hereinafter mentioned. Hence arises another disputed question of fact. Afterwards, but when, the parties do not agree, nor does the evidence precisely specify, Herbert and Kyle’s notes, pledged to Miller, were surrendered by him at the instance of the Doughertys to their joint creditors, and the amount was subsequently paid to them. It does not appear that the two lots and the bank stock are more than sufficient, and defendants allege them to be a slender security for their liabilities.
Complainant insists that the defendant, Miller, acted iniquitously in giving up the notes on Herbert and Kyle to the Eastern creditors; and for that reason his lien, as a prior mortgagee of the two lots, should be postponed in equity to his own. And, beyond all doubt, if the fact were that Miller had the first claim to security by mortgage and pledge on certain property, and complainant a second mortgage or security on the same, of which *624 Miller had notice, and if there were no other persons having a better claim than complainant, Miller would hold the excess beyond the satisfaction of his own claim, as a trustee for the benefit of complainant, and a court of equity would hold him accountable for a disposition of that excess to the prejudice of complainant.
[319] 1. Let us, then, first take it for granted that it was the intention of John Dougherty and complainant, by the instrument of the 20th January, and the mortgage of the 21st, to give complainant a lien on Herbert and Kyle’s notes and the bank stock, in addition to the two town lots, second only to the lien of Miller and his associates, to the amount of $12,000, and that the instrument relied on was effectual for that purpose, so far as they could make it effectual, and that Miller was apprised of it before he delivered over the notes of Herbert and Kyle to the other joint creditors; was the subsequent act of delivering up the notes to them such a wrong committed by Miller towards White as a court of equity can redress ?
Leaving the complainant for a moment out of view, how would the equities stand between the other joint creditors, and Miller and others ?
That the joint creditors of a partnership have in equity a general lien on the funds of the partnership, and that in case of insolvency they are to be preferred to the creditors of an individual member of the firm, is at this day too firmly settled to be questioned. 1 Ves. Rep. 239; Field v. Taylor, 4 Ves. Rep. 396; 6 Mass. Rep. 242; 2 John. 280; 4 John. Ch. Rep. 522; 20 John. Rep. 611.
The other joint creditors th® say to Miller and the Woodses: W.e are all joint creditors, we have all a general lien on the partnership funds, there is not enough to pay us by $8,000 or $10,000, we do not claim a participation with you in the additional specific lien that you have by your superior vigilance acquired on the two lots; but we ask that you will exhaust that fund before you commence a diminution of the already insufficient fund to which alone we can have recourse under the circumstances, — he partnership property.
Could Miller resist such a demand in a court of equity ? We take it to be clear that he could not. It is an established general rule of equity that where two ascertained creditors have one fund common and open to both, and one has a second fund to which the other cannot resort, the former shall exhaust his separate fund before he shares in the common [320] one. Everston v. Booth, 19 John. Rep. 63; Hawley v. Mancius, 7 John. Ch. Rep. 184; 17 Ves. 520.
There are some exceptions to this rule, of which the supposed case would not be one. There would be peculiar propriety in applying the general rule to the case supposed, as both of the funds, namely, the joint property and the individual property, or, in other words, both John and George *625 Dougherty, and John Dougherty would, independently of specific liens, be equally liable to the claims of all the joint creditors, both to the plaintiffs in the supposed application, and to Miller and others, the supposed defendants.
If a court of equity would have compelled Miller to surrender Herbert and Kyle’s notes to other joint creditors, they having ascertained their demands by judgment, upon its being seen that Miller had a sufficient separate fund to secure him, it cannot be said he acted unconscientiously by doing the same thing without its decree. That the creditors who got them are Iona fide creditors, is not contested, though it does not appear that their demands were ascertained by judgment. Indeed, it is expressly admitted that there was and is a deficiency of joint means to discharge joint liabilities to the extent of $ 8,000 or $ 10,000.
The complainant, however, here interposes his claim, and says that he has a lien on the lots, stock, and notes. Admit it. When did it originate ? On the 20th of January. To this the joint creditors answer, As to the notes and other joint property, we had a lien of a prior date, a general lien on all the partnership property, and there is not enough to' pay us.
Miller and Woods answer as to the two lots, and say, We too had a lien of a prior date, which originated on the 8th of January. And they all answer, When we exhaust the value of the lots and all the joint property, there is still a part of the joint debt unpaid.
There seems to have been a sort of vague idea in the mind of the complainant, that as the creditors of John and George Dougherty were entitled to a preference over him as to the joint property, he, as a creditor of John [321] Dougherty, was entitled to a similar preference over them as to the individual property of John, notwithstanding some of the joint creditors had a prior specific lien on it. In this he is wholly mistaken. There is no legal foundation for such a preference. The liabilities of partners are joint and several. John Dougherty was as much the debtor, or as likely to be the debtor, of Miller as he was of White. They were running a race, and qui prior est in tempore potior est in jure.
2. Supposing that John Dougherty possessed the legal right on the 20th of January to dispose of the Herbert and Kyle notes and the bank stock to the prejudice of the joint creditors of himself and partner, did he do so ?
The instrument of that date is not very clear and definite in its terms. At least it is incomplete in its character, and contemplates the subsequent fulfilment of what it only proposes. We must look to the mortgage deed of the next day for that fulfilment. One of the partners had the day before rashly promised what he then thought it improper to perform, and what this Court think he should neither have promised nor performed to, •=— dispose of a large portion of the partnership property without the consent of his copartner; or without the consent of his joint creditors, to pay or secure an individual debt of his own. On the 21st he executed a mortgage deed, *626 in which none of the joint property was included, but convej'ing the two lots in Winchester, probably in lieu of the excluded property. This deed was accepted by complainant’s agent, and the arrangement acquiesced in by himself. We think the complainant had no lien beyond the terms of the mortgage.
It is not thought necessary to examine very particularly whether the defendant, Miller, had notice of the instrument of the 20th. Because, as we do not consider the arrangement then proposed to have been consummated, nothing obligatory existed of which notice could be given. And it will not be pretended, that notice would vary the effect of the instrument itself, and make it communicate an interest, if, without notice, it would communicate nothing. We should require to be much better satisfied than we are, however, [322J before we should be prepared to say, in opposition to the direct denial in Miller’s answer, that he had the alleged notice.
The complainant relies on another ground. He and John Dougherty were once partners in merchandise. They dissolved their partnership on the 6th day of July, 1815, and by the deed of dissolution, complainant “ relinquished to said Dougherty all his interest in both of the said firms, including real property, as well as all other, which then belonged to either of said firms.” Complainant says that his legal interest in an undivided moiety of the real estate did not pass by this deed, and that therefore he can now maintain this bill. This averment comes with but a bad grace from the complainant, after he has permitted John Dougherty to remain in undisturbed possession for some years, under the deed of partition, and by that means enabled him to make conveyances to innocent purchasers; but more especially after he has himself .expressly recognized the estate in fee of Dougherty, by himself accepting from him a mortgage in fee, as the bargainee of a legal title. This is manifestly an afterthought, first introduced in an amendment of his bill, contrary to the scope, frame, and nature of his first complaint.
But a sufficient answer of itself to the proposition is, that complainant, if he be correct, need not come into this Court. Let him go into a court of law, and there set up his supposed legal title to an undivided moiety against the persons having the adverse possession. Upon what principle can it be seriously insisted that a court of equity would indulge a complainant actually asserting such a claim, directly in the face of his own deed, relinquishing all right? Did he even come for a partition,'as he does not, he would be, told, in such a case, first to establish his title at law. 1 John. Ch. Rep. 117; 4 John Ch. Rep. 276.
But again, it is said that if the legal title passed by the deed of dissolution, the plaintiff has, as vendor, a lien on the lots for the consideration money. There are several reasons why he cannot successfully assert such a lien.
*627 , A sufficient one is, that Miller and others were purchasers [323] without notice of any lien from anything that appears. Sugden on Vendors, and authorities there cited, 398; 7 Wheat. 46; 3 Hay. 195.
Again, by complainant’s own showing, he has waived such a lien, if he had it, by taking distinct and independent securities. Sugden, 387, Brown v. Gilman; 4 Wheat. 255, 292. Besides taking a mortgage on these, he took a mortgage on three other lots.
We are of opinion that the decree of the Court of Equity dismissing the complainant’s bill ought to be affirmed.