## Common Pleas of Philadelphia.

**1809.**

*Wednesday,*
June 7.

KNOX *against* WORK and others.

The discovery of material evidence after the trial, which by using due diligence the party might have discovered before, is no ground for a new trial.

THIS was an action of trespass for breaking and entering the plaintiff's house, and committing an assault and battery upon him.

Upon the trial at an adjourned court in *January* last, the jury found a verdict against *Work* and *Link*, two of the defendants, 100 dollars damages, and not guilty as to the others.

*Sergeant* and *Hopkinson* on the next day obtained a rule to shew cause why there should not be a new trial, upon several grounds; and among others, upon the ground of material evidence discovered subsequent to the verdict. On this part of the case, they produced the affidavits of two persons, that the plaintiff had told them he had no resentment against *Work*, and had sustained no damages by him, or any of the defendants; that he was desirous they should mention it to *Work*, and have the matter made up, and that he would pay his own costs, if *Work* would pay his. The defendants likewise swore that they were ignorant of the matters set forth in the affidavit, until after the verdict was given in, otherwise they would have procured the attendance of the witnesses.

*Brown* and *Milnor* opposed the new trial; and the opinion of the court upon this point, was as follows:

RUSH, *President.* Before we go into this question, we shall refer to an opinion given by the president of this court at *Easton* 1792. (His Honour here read the note of *Aubel* v. *Ealer* (a).

(a) AUBEL
  *v.*
  EALER.
In this case all matters in variance between the parties were referred under a rule of court, and at *December* term 1791 the referees reported in favour of the plaintiff 40*l.* 19*s.* 6*d.* The defendant excepted to the confirmation of the report, upon the ground that since it was made, he had found a receipt in full from the plaintiff for 1157 dollars, dated 18th *February* 1780, which had been mislaid, and

We believe it to be impossible to find an instance of a new trial granted in a court of *law*, to let in evidence discovered after the trial, except in the case of the coachmaker's bill, in

could not be produced at the hearing before the referees. The exception was accompanied by an affidavit of its truth, and that the receipt was material to the exceptant's defence in the cause; but it appeared that the receipt had been constantly in the defendant's possession, though mislaid.

The referees stated to the court that the receipt was not produced before them, but that mutual accounts before the date of the receipt were produced, and that the defendant did not request further time in order to produce the receipt or any other testimony.

The exception was argued at *December* term upon a motion to set aside the report.

RUSH, *President*, delivered judgment. It seems to be agreed that the same causes which will set aside a verdict, and induce the court to grant a new trial, will also be sufficient to induce them to set aside a report. 1 *Dal.* 314, 15. Upon this ground we shall take up the present question.

Among the many reasons assigned in our law books for granting new trials, by far the most usual grounds in fact and practice, are the mistakes of the judge or jury who tried the cause. With good reason the mistakes of the attorney, counsel, *or party*, have been considered in a more rigid point of view. Hence the general rule most certainly is, that mistakes originating with them cannot be relieved by a new trial, nor will a new trial be granted on account of evidence being discovered after the trial, which by using due diligence, might have been discovered before the trial. 5 *Bacon* 250. An action of *crim. con.* was brought, and verdict for 1000*l.* After the trial it was discovered the woman was not the *wife* of the plaintiff. The court nevertheless refused a new trial and laid down the above rule, and this so late as the reign of *George* II.

There shall be no new trial where the party might have had the evidence on the first trial. *Stra.* 691. The same doctrine is again laid down in a case still more recent. *Cooke* v. *Berry*, 1 *Wilson* 98. An action was brought upon a promissory note, to which the defendant pleaded that plaintiff accepted of some chests of tea in satisfaction, upon which issue was taken, and verdict for the defendant. Motion for a new trial, on affidavit that the plaintiff took the plea to be a sham plea, and had a letter from under the defendant's hand, in which he acknowledged he had disposed of the tea, and engaged to pay the plaintiff the money due on his note; which letter the plaintiff did not produce at the trial, thinking the plea a sham plea, and that defendant could not prove it. By the court, " New trials are never granted, where it appears the party might have produced and given material evidence at the trial, if it had not been his own fault; because it would tend to *introduce perjury*, and there never would be an end of causes, if once a door was open to this. The plaintiff had notice of the defence of the defendant in his plea, which makes this a strong case, and ought to have come prepared to falsify it, at the trial."

In the foregoing case we see the same reason assigned, viz. the danger

*Broadhead* v. *Marshall,* 2 *W. Black.* 955., the circumstances of which were very particular. The defendant was an *executor;* in the next place he was in the *West Indies* at the trial;

of perjury, as in the case where new trials have been refused, when the testimony kept back, has been that of living witnesses. If a plaintiff or defendant may come forward and swear that he had mislaid a piece of evidence, and that he could not find it at the trial, and in such case be considered as entitled to a new trial, it will be opening a wide door to perjuries indeed. Should this be once established as the law of the land, nothing more will be necessary for any artful man, than by designedly keeping back a part of his evidence, and swearing that he could not find it, to secure a second trial on every occasion.

The case in 2 *Blackstone's Rep.* 955., when duly attended to, evidently corroborates the opinion of the court. There, it is true, a new trial was granted, where a receipt was discovered *after the trial.* But the case is a singular one—the party to whom the *receipt* was given, was dead—the executor was *out* of the country, at the trial, and the papers and books of the testator lodged in the hands of a *third* person who was disinterested, *viz.* the attorney, who swore he did not know there was such a receipt, or that it was in his possession at the time. Had it not been for these circumstances, the general rule it is evident, from the expressions of the reporter, would not have been departed from. His words are " on the special circumstances *of this case,* a new trial was granted." In the case before us, the receipt appears to have been *always in the possession of the defendant himself,* who certainly must have known of the existence of it, and ought to have applied for further time to search for it.

We are fully sensible of the case in 2 *P. Wms.* 426, *Countess of Gainsborough* v. *Gifford,* where the master of the rolls says, I do agree we ought to be very tender how we help any defendant after a *trial at law,* in a matter where the defendant had an opportunity to defend himself. But such cases do exist; as if the plaintiff at law recovers a debt, and the defendant afterwards finds a receipt under the plaintiff's own hand for the money. The defendant *seems entitled* in such case, to the aid of equity.

This opinion we observe, admits that a new trial would not be granted at *law,* in the case specified. And we may observe still further, it is not an adjudged case, but a mere opinion of the master of the rolls, and that too expressed in the language of doubt. The defendant *seems entitled.* No adjudged case of the kind can be found.—See *Prec. in Chan.* 221, where the chancellor refused to relieve one against whom there was a verdict in trover, because he had an opportunity of defending himself. We certainly do not sit here as a court of chancery, nor do we conceive we are warranted in assuming the powers of such a court, or going further than other judges have gone before us. 1 *Dall.* 142. We are called upon to decide a point of law, as a court of law; and on such direct appeal it would not become us, to go the lengths, or to exercise the discretion which juries frequently do in *Pennsylvania.*

Whatever doubts may possibly be entertained on this subject, yet upon

in the third place, the paper was not in the hands of the *party*, but of the attorney. When a case of the same kind occurs, we shall have no objection to a new trial.

It is laid down as a general principle in various books, and is said to be an established rule, not to grant a new trial on account of evidence discovered *after* the trial, which by using due diligence might have been discovered *before*, or which it was in his *power* to have been furnished with. It would be of most dangerous consequence, to suffer one party, after he has heard the evidence of the other, to give new evidence. 6 *Bac. Abr.* 672. Upon this principle a new trial has been refused, where an *interested* witness had been examined, and not discovered till after the trial. *Turner* v. *Pearte*, 1 *Term* 717.

In the court of chancery in *England*, where the trial directed at law, is to satisfy the chancellor's conscience, it is certain the rule is different. In *Richards* v. *Symes*, 2 *Atk.* 319., lord *Hardwicke* says, there is a difference between issues at common law, and issues directed out of chancery, to inform the conscience of that court, which is not tied down to the same strictness and regard for verdicts as courts of common law; that he is aware of the inconvenience which might arise from granting new trials upon the discovery of new evidence relating to the same fact; and that courts of common law might set aside a verdict-nine times out of ten, if it should be a ground for a new trial, that one of the parties was not

---

the whole we take the law to be as we have stated, and we have taken due pains to investigate the point.

At all events the decision of the cause this way, will tend to excite vigilance and attention, to prevent fraud and perjury, and to put an end to litigation, objects of immense value in the administration of justice.

It is infinitely better that a single person should suffer a mischief, than that *every man* should have it in his power, by keeping back a part of his evidence, and then swearing it was mislaid, to destroy verdicts and introduce new trials at their pleasure. The idea is pregnant with alarming consequences; and would be a severe blow at the trial by jury. For if the defendant is entitled on this affidavit, to a second trial or reference, I see no reason why he might not, on a similar affidavit, have a third or fourth trial or reference, and the plaintiff an equal number also.

For these reasons, the court are unanimously of opinion, the report ought not to be set aside, and do therefore confirm it.

Report confirmed.

apprised of the evidence on the other side. He concludes with declaring there are no grounds for a new trial in that case, and that it would be of dangerous consequence to grant it merely upon a suggestion, that the party was not apprised of the evidence, and therefore not prepared to answer it.

In *Stace* v. *Mabbot*, 2 *Ves.* 552., lord *Hardwicke* makes the same distinction between the two courts, and expresses himself as follows. " I cannot say that my conscience is satisfied " as to the grounds and truth of the evidence on which this " verdict is given. I proceed therefore upon the principles " of *this* court in directing trials, and not to break in upon " the rules *which are wisely laid down by courts of common* " *law*, as to granting new trials." From expressions like these, it seems, as if lord *Hardwicke* felt himself officially bound, to adopt a rule of decision in one court, which his sound and penetrating understanding taught him to believe, was differently and more correctly practised in another court.

The last case to which we shall refer is that of *Marriot* v. *Hampton*, 7 *Term Rep.* 269. The plaintiff having paid money for goods sold by the defendant to him, and lost the receipt, was sued and obliged to pay the money over again. After this he found the receipt, and brought an action to recover the money back. On the trial he was nonsuited by lord *Kenyon*, and the nonsuit was approved by the court of King's Bench, who refused even to give a rule to shew cause. It often happens, says the chief justice, that new trials are applied for on the ground of evidence supposed to be discovered *after* the trial, *and they are as often refused*; but this case he says goes much further. The court in their observations on this case take for granted, that the discovery of the receipt, would *not* be a ground for a new trial, much less to recover the money back again.

This opinion in the King's Bench in 1797 is in point, and fully supports the prior decision at *Easton* in 1792, by the president of this court, in the case of *Aubel* v. *Ealer* before mentioned. It is the opinion of this court therefore that the rule to shew cause why there should not be a new trial should be discharged.

Rule discharged.