McVICKER (GRAU v.). See Case No. 5,708.

McVICKER (MURPHY v.). See Case No. 9,951.

McWILLIAMS (GOLDSBOROUGH v.) See Case No. 5,518.

## Case No. 8,933.

### MACY et al. v. DeWOLF et al.

[3 Woodb. & M. 193.] [1]

Circuit Court, D. Rhode Island. June Term, 1847.

NEW TRIAL—INTEREST OF WITNESS—PART OWNERS — MORTGAGEE OF ONE — LIEN OF VESSEL—NEWLY DISCOVERED EVIDENCE—SHIPPING—SUPPLIES—COSTS.

1. A new trial will not usually be ordered on account of the interest of a witness, if, from the facts, it appears the interest would probably be released on another trial and the verdict be the same way.

[Cited in Aiken v Bemis, Case No. 109; Whetmore v. Murdock, Id. 17,509.]

2. Owners of whale ships are. in the absence of express proof making them partners, only part owners in the vessel, and a mortgagee of the share of one has no interest in the vessel to prevent him from being a witness in a suit against the part owners for supplies.

[Cited in Mitchell v. Chambers, 43 Mich. 160, 5 N. W. 64.]

3. The vessel is not under any lien to the creditor for his debt. or to the owners for contribution, if some pay more than others. Nor will the court presume that the proceeds of the voyage stand in any different position, if no special agreement is put in concerning them, as such an one generally exists and governs the nature of the interest rather than the rules of law, independent of such an agreement.

[Cited in The Jennie B. Gilkey, 20 Fed. 161.]

4. If a new trial is asked for newly discovered evidence, it must clearly appear not to have been known before, nor be merely cumulative of old points, nor left uncertain what it is and whether it be new and important; or whether the witness be credible who is to prove them.

[Cited in Aiken v. Bemis, Case No. 109; Whetmore v. Murdock, Id. 17,509; Vose v. Mayo, Id. 17,009.]

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

5. If one who advances supplies for a ship, does it at first on the sole credit of one part owner, or afterwards takes his separate note for the amount and gives time on it after due, so that the other part owners settle with him, as having paid or been accepted as paymaster of the amount, it bars a recovery against the other owners.

[Cited in The Daniel Kaine, 35 Fed. 787.]

6. Agreements between the part owners before fitting out, may be proved on their part by their conversations, testified to by others, as it is evidence of a contract made between them, and is a part of the res gestae of the fitting out.

7. A creditor with no specific lien is not incompetent to testify so as to increase the amount of his debtor's estate; nor is a mortgagee of a share in a vessel liable for supplies to the mortgager, while the latter is in possession.

8. The whole previous cost must be paid, if a new trial is had on newly discovered evidence.

This was an action of assumpsit in three counts. One was for goods sold and delivered. Another on an account annexed for like goods and one for money had and received. The plaintiffs [Josiah Macy and others] proved the sale of copper for the ship Corinthian, January 10th, 1842, to the value of $2,493. The vessel lay at Bristol, Rhode Island, where all the defendants [William H. DeWolf and others] resided, and who were part owners of her at that time, in different shares. The plaintiffs resided in New York, and made the bargain there as to the copper, with DeWolf, but charged the same on their books to the owners of the ship Corinthian. The bill for the same was presented to DeWolf, and his note taken for the amount, August 8th, 1842, and the account settled. This note had never been paid, but run for six months; and the plaintiffs then indulged DeWolf with further time, till June, 1843, when DeWolf became more embarrassed, and was considered as failing. After that a resort was made to the other owners, in August, 1843. In the meantime the owners had met and adjusted among themselves the expenses of fitting out the ship, and allowed DeWolf on his receipt from the plaintiffs, at the time the note was given, the amount of it as thus advanced by him. The note on its face did not purport to be signed by DeWolf as agent, for the owners, but simply in his own name. There was much evidence in the case as to difficulties among the owners in fitting out the Corinthian on this voyage, and the refusal of some to unite in it, and especially to make DeWolf their agent, though he had acted in that capacity in former voyages. It was also proved that several of the owners were themselves to furnish supplies in a ratio with their respective interests; and that DeWolf purchased some articles as an owner, while in buying others he seemed to act as agent for the other owners. To show the settlement of the owners with DeWolf, as having bought this copper on his own account, and towards his share, and also, to prove that some of the owners refused to make DeWolf their agent to procure supplies, Mr. Dimon was placed on the stand, who held a mortgage from DeWolf of his interest in this ship and her cargo. Objections were made to his competency, but for the purpose of proceeding in the trial of the whole matter he was admitted, subject to future consideration. The case was attended by much conflicting evidence, and the jury having once disagreed, found, on the second trial, a verdict for the defendants. There was a motion for a new trial, not only for various rulings then, but on the allegation of newly discovered evidence since.

It is not necessary to enumerate further the different points which arose, and the ruling on them, as they are detailed sufficiently in the written motion for a new trial, a copy of which is annexed:

"Rhode Island District, ss. U. S. Circuit Court, June Term, A. D. 1846. In the action, Josiah Macy & Sons v. William H. DeWolf et al. And now, on the fourth day of said term, and within two days after verdict rendered in said action at said term, the plaintiffs in said action come and move the honorable court that said verdict and the judgment rendered thereon, be set aside, and a new trial granted therein. 1st. Because the court allowed Byron Dimon, a witness offered on the trial of said action by the defendants therein, to be sworn and testify in said action; said Dimon being then and there objected to by the plaintiffs as incompetent, on account of having an interest in the result of said action—said Dimon at the time of giving said testimony having and holding a mortgage made and executed by W. H. DeWolf, one of the defendants in said action, to him, said Dimon, on certain shares of the ship Corinthian and cargo and proceeds thereof in the last voyage, of Bristol, R. I., to secure a debt due from said DeWolf to said Dimon; and that the plaintiffs in said action claim that said ship and owners were pledged and liable to respond to the plaintiffs for the amount of their claim in said action; and that the other defendants, as part owners and partners, have a prior lien on said ship, cargo and proceeds, to said mortgage; and that if said plaintiffs recover in said action, it takes the share of said DeWolf in said ship, cargo and proceeds, to pay the other owners their contributive share of outfits and charges of said W. H. DeWolf for the amount which said other owners and defendants may have paid or advanced for him, and from and under the said mortgage and mortgages of said Dimon; and here refer to the rulings and remarks of the court at the time on trial. 2d. Because (although said Byron Dimon was thus incompetent as witness,) he was allowed by said court on said trial to testify as to a private conversation between W. H. DeWolf, Mark A. DeWolf and Lemuel C. Richmond, all owners in said ship and defendants in said action, relative to an al-

leged limitation of the authority of said W. H. DeWolf as agent of said ship on her last voyage, and to the effect that the said W. H. DeWolf would not pledge the credit of said owners and defendants; and here refer to the rulings of the court and remarks at the time. Because the court allowed a bill of lading of the copper, (the subject matter of the suit,) produced and made out by the defendants or their agents, and not made out by the plaintiffs or by any one authorized by them to pass to the jury, being objected to by the plaintiffs and once rejected by the court, as evidence of a personal credit to W. H. DeWolf, the same being made out to him. Because since the trial of said action new and other material testimony for the plaintiff has been discovered, and which they could not have known before, the same being first by plaintiffs known from the cross-examination of one of the witnesses produced by the defendants in the action Fearing v. DeWolf [Case No. 4,711], tried at the same term of said court, viz: That W. H. DeWolf had been for a great number of years agent for the ship Corinthian, and held himself out to the public, and acted in fitting said ship in the voyage for which said copper was furnished, in the same manner that he had done for three or four previous voyages, and with the knowledge of the other defendants. And also, that they have since discovered, as aforesaid, that said defendants had entered into an agreement to appoint, and did authorize, said W. H. DeWolf to act as agent for said ship and said defendants, on said last voyage. And also, because the court in said case charged the jury that the defendants said and proved, adverting to (and meaning) the testimony of Gov. Dimon as to the private conversation between said defendants, when plaintiffs were not present, and never brought to knowledge of plaintiffs, and then objected to by plaintiffs—that the contract among and between the defendants was that each should fit his shares for himself, and that this copper was bought by DeWolf himself, and went to furnish and fit his shares, which was erroneous. Because said verdict was against the weight of the evidence as proved on the trial, and against the law and evidence, and unjust and erroneous. Wherefore they ask the honorable court to set aside said verdict and judgment, and grant a new trial thereon. By their attornies, Greene & Potter."

"It is agreed on the part of the defendants that the above may be modified and amended according to the facts. I. R. Bullock, of counsel for the defendants."

"Rhode Island District, ss. Clerk's Office, Circuit Court, at Providence, November 17, 1846. I hereby certify that the above and foregoing four pages contain a true copy of the 'Motion for new trial in case of Josiah Macy & Sons v. William H. DeWolf et al.,' now on file in this office, duly examined and compared by me. John T. Pitman, Clerk Circuit Court, R. I. District."

This motion was argued at the last November term, by—

Greene & Potter, for plaintiffs.
Blake, Bullock & Whipple, for defendants.

WOODBURY, Circuit Justice. This motion relates to causes for a new trial; some happening since the verdict, and some before. Those assigned for what occurred before, will first be attended to. They do not possess much difficulty, except that one in respect to the competency of the witness, Dimon. One is that the verdict is against evidence. But the principles just laid down in the case of Fearing v. DeWolf [Case No. 4,711],[*] show that this is not one of the class of verdicts which this court feels justified to set aside on the ground that it is against the weight of evidence. For although it is not very probable that if the court had been in the place of the jury, its finding would have been the same way; yet on a review of the whole testimony put in, it is certain that the balance of it was, in fact, so doubtful, as to cause one disagreement of a jury, and some hesitancy in another pannel, at the first trial. The material facts were not without difficulty, as (1) whether the credit was not actually given to DeWolf alone, in the first instance; or (2) if not so, whether the plaintiffs did not actually receive his note alone, afterwards, in payment for the copper; or (3) if otherwise, whether they made him in any way their agent for this voyage so as to be bound by him in that capacity; or (4) whether the plaintiffs did not give to DeWolf a receipt in payment, and permit him to use it in a settlement with the other owners, and wait so long before a resort was had to them, as in justice to exonerate them, if before liable.

The testimony, and the circumstances bearing on these various matters, were in several respects conflicting. There were contradictions among the witnesses and the probabilities of the case, which it was necessary a jury should weigh, and one on which they might fairly come to a conclusion for the respondents, especially as the burthen of proof devolved on the other side; and they might do this without being clearly guilty either of mistake or abuse of power.

Their verdict in this case, therefore, cannot be set aside as against the weight of evidence, but on the contrary, accords rather with the conclusions formed by the court itself on the particular evidence in this case. Nor do I find that the instructions given as to the law connected with these points were erroneous, or that the finding of the jury was counter to any of them. They were as follows: Part owners of vessels are prima facie liable for supplies furnished to their vessels, as they get the benefit of them. Abb. Shipp. 105, 143; The Nestor [Case No. 10,126]; Story, Partn. 591–598; Rich v. Coe, Cowp. 636; Harrington v. Fry, 1 Car. & P. 289. But if credit was ac-

tually given at first to one of them, as contended here to W. H. DeWolf alone, the rest of the owners were not to be made liable for such supplies. Jennings v. Griffiths, Ryan & M. 42; 11 Mass. 40, 41; Curling v. Robertson, 8 Scott, N. R. 12; 13 Law J. (N. S.) 137; 7 Man. & G. 336; 6 Pick. 120; 9 Johns. 470. So, if the credit was not given to him alone, but his note alone was, in truth and design, afterwards taken in payment, and especially if renewed or indulged with extended credit. Abb. Shipp. 134; Reed v. White, 5 Esp. 122; Story, Ag. 441, 457. Cases of doubt, whether a note was so taken in fact, do not impair this principle. Leland v. The Medora [Case No. 8,237]; The Chusan [Id. 2,717]; and The Nestor [supra]. Because a note does not merge the debt without such an agreement, except in two or three states. Abb. Shipp. 134, note; 2 Johns. 311; 1 Conn. 290; 24 Pick. 20; 12 Johns. 411; 10 Mass. 47; 18 Me. 249. See cases last cited. If the note be signed by one part owner, without stating he is agent for the others, it is presumed to be signed in his own behalf alone. Stackpole v. Arnold, 11 Mass. 29. But this may probably be rebutted by other testimony conclusive as to his agency. Nor are the owners liable, if a note has been taken of one alone, and the amount receipted to him, and time elapses without a call on the owners, and thereupon they adjust the concern between themselves, as if the note was deemed a payment. James v. Bixby, 11 Mass. 40; 5 Eq. Cas. 152; Wyatt v. Hertford, 3 East, 147; Cheever v. Smith, 15 Johns. 276; 1 Greenl. Ev.; Story, Ag. §§ 431–435; Abb. Shipp. 136, note.

Again, another ground assigned for a new trial, because conversations between the owners as to fitting out, not in the presence of the plaintiffs, were allowed to be proved, is untenable, if we look a moment to the character of the case. Parol evidence by Dimon or any other witness ruled to be competent, was proper to show that the owners contracted with each other not to have DeWolf for an agent any longer, nor permit him to pledge their credit for supplies. This does not impugn the maxim, "res inter alias actae alteri nocere non debet," (Broom, Leg. Max. 432). This was one step, and a proper one, in their defence against his purchases, made in order, as they alleged, to furnish his own share in value of the supplies. But the jury were instructed that this would not exonerate them, if they had before empowered him to make purchases on their behalf and did not give notice that his agency had been terminated. Or unless in these voyages it was the usage to have a person, when agent, act only for one voyage without a new appointment. If the latter was the case, then the burthen devolved on the plaintiffs to show that DeWolf had been appointed as agent for this voyage in order to charge the other owners for his purchases, made in truth, on his own private account; and it was pertinent and competent evidence for them or any of them, to rebut

any inferences or proof against them as to his agency, by showing that they had decided, on deliberation before hand, not to constitute him their agent. So, the other objection as to the bill of lading of the copper being admitted as evidence, though made out by the forwarding house, is not to be sustained. Because it was admitted and so expressed at the time, only to show as a part of the res gestae in forwarding the copper, to whom it was done, or how it was done, and understood at the time by those engaged in it; but not to bind the plaintiffs unless believed to be brought home or known to them.

Let us recur, then, to the only remaining objection to the verdict on account of any ruling at the trial,—the incompetency of Dimon as a witness, on the ground of interest in the result of this action. His interest, if existing, arises from the fact that DeWolf mortgaged to him his share in the Corinthian, and his interest in her cargo, with much other property, in order to secure him as endorser on several demands for DeWolf. One mortgage deed was given as early as December, 1842, and the other executed before this controversy, in July, A. D. 1843. Neither of them were shown to have been released or discharged at the time of this suit, though the witness testified that he considered the other property assigned to him at the same time as sufficient for his indemnity without DeWolf's share in this vessel. Firstly, what is his interest in the result of this action, in respect to the vessel—as the attention of counsel seems chiefly to have been directed to that? If the owners of the vessel at the time of the purchase of this copper are held to be liable for it, as already shown that primâ facie they are, this does not, of course, make the share of one of them in the vessel itself liable to the plaintiffs, and much less impose a lien on it in rem for contribution in favor of the other part owners. 6 Pick. 120. They had no remedy against the vessel in the first instance, she not being a foreign vessel, in and supplied in New York by the plaintiffs. Leland v. The Medora [Case No. 8,237], Abb. Shipp. 153. She was at Bristol, in Rhode Island, when and where the copper was wanted for her, and where all the owners lived; and no proceeding in rem could have been instituted against her in New York, though she, in some sense, and for some purposes, might be deemed foreign as to New York. Thus, had she been actually there and supplied there, when owned in Rhode Island, she might, perhaps, have been treated for this purpose as foreign. [The General Smith] 4 Wheat. [17 U. S.] 438; [The St. Jago De Cuba] 9 Wheat. [22 U. S.] 409, 416; The Nestor [Case No. 10,126]. But she was not there; away from home, without means, in a distant country, or nobody with her who was an owner; and hence does not come within the principle of the lien as a foreign vessel supplied in a foreign port.

Pritchard v. The Lady Horatio [Id. 11,438].

The special laws of Rhode Island, like those of some states in the Union, and in France, might have made her liable even for domestic supplies, but unless they do it expressly, the rule is the other way. [The General Smith] 4 Wheat. [17 U._S.] 438; The Nestor [supra]; The Marion [Case No. 9,087]; Read v. Hull of a New Brig [Id. 11,609]; Harper v. New Brig [Id. 6,090]; 14 Conn. 404; Abb. Shipp. (last Ed.) 142. note. There were other positions assumed, also, such as the subsequent taking of DeWolf's note as payment, that it would exonerate the vessel from any lien to the plaintiffs, if it ever existed; and these positions were believed by the jury to have been well sustained, so far as regards the facts. But, as the lien on the ship itself never existed in favor of the plaintiffs, it is unnecessary to examine them under this head.

It is next contended that if a claim of a creditor for supplies does not exist in rem in this case, the vessel itself is liable to each part owner for contribution, if subjected to pay more than his ratio; or in other words, that the shares owned by each are chargeable with their proportion of what may be recovered and collected from each owner, over his proportion, in an action like this, for supplies to the vessel. If this be so, then Dimon, as specially interested in DeWolf's shares, might feel interested to protect them from this charge. And though he has other security deemed sufficient, his special legal interest still remains in these shares, and if he did not wish to retain them as additional security, he should have released his interest in them or assigned it to other creditors of DeWolf before testifying. But is the share itself in the vessel under a lien in law to pay a part owner for his extra advances? It is clear that one part owner of a vessel, paying or being subjected to pay, as he is in solido, sometimes more than his ratio of the supplies, has a remedy against the others, in personam, for the excess. Helme v. Smith, 7 Bing. 709; 5 Moore & P. 744; Davis v. Johnston, 4 Sim. 539. But when they have no common agent in whom the title of all is fully vested, it is difficult to see how they could enforce such remedy against the shares in rem more than against any other property of each owner. They can attach them in a suit, if not in the meantime conveyed to others. But on the ground of principle it seems certain that such shares themselves, if in the meantime sold or mortgaged for a bonâ fide debt or liability, cannot be followed. In this instance, perhaps, there has been no such change of possession under the mortgage. as to dissolve the lien on that account, provided a lien ever existed; the vessel seems to have been still in the same hands and control after the mortgage as before, till the voyage was completed; and the proceeds of her last voyage, for aught yet shown, remain unsettled. Prin-

ciple, then, being against such a lien, how does this point stand on precedents?

It seems settled that part owners of a ship are tenants in common, and not joint owners. 2 Ves. & B. 242; 4 Johns. Ch. 522. Hence they may sue each other. It is also settled, generally, that there is no lien by one on the share of another for outfits and supplies. Ex parte Young, 2 Ves. & B. 242; Merrill v. Bartlett, 6 Pick. 47; and Thorndike v. DeWolf, Id. 120; 14 Ves. 393; Id. 120; Braden v. Gardner, 4 Pick. 456; Patton v. The Randolph [Case No. 10,837]; Smith v. De Silva, Cowp. 469; Story, Partn. §§ 419, 497; 5 Ves. 469; 2 Rose, 79; 1 Mont. Partn. 102; Id. 89, note 88. These more modern cases seem to overrule Doddington v. Hallet, 1 Ves. Sr. 497, as understood by some, and so far as regards the general principle. They make part owners not partners, nor subject to the principles of copartnership, unless under special contracts or usages, changing the general character of the transaction. 20 Johns. 611. And so far as 1 Ves. Sr. 497, goes beyond this, it is not now considered sound law. The principle that part owners are not partners, is also the general principle on this subject, and hence it is the legal presumption; and whoever avers that these owners are partners in a particular case, must go forward and show it as an exception. 1 East, 20; 8 Barn. & C. 12; 3 Kent, Comm. 154. It is true that previous partners may together own shares in vessels, and then they may hold these shares as partners, and on principles of partnership, and subject first for partnership debts. 1 Story, Eq. Jur. § 490; Hoxie v. Carr [Case No. 6,802]; Ex parte Jones, 4 Maule & S. 450; Mumford v. Nicoll, 20 Johns. 611; 6 Mass. 279; 9 Mass. 490. So, when they agree to be partners, or when it is the usage to be so for the voyage. Doddington v. Hallet, 1 Ves. Sr. 497. In these ways it is admitted that there may be joint owners of a vessel, yet this is not the case when each proprietor, as here, merely owns an undivided share, since they then become tenants in common as before stated. To hold part owners to be partners, without an express contract to that effect, would not only violate the legal principles which govern other tenancies in common, but enable one part owner,—though of only one-hundredth part, —to sell the whole ship or whole property owned in common, which is neither in conformity to usage or the fitness of things in such adventures. 3 Kent, Comm. 151, 152; 8 Taunt. 774.

It seems, after much difference of opinion, to have been held in New York, that the owners of a ship, in shares, may be under special circumstances, quasi partners; and the property is then liable for all demands by third persons, before going to satisfy the private debts of any one partner to third persons. But that is not the case ordinarily, as before shown, the part owners being usually

tenants in common and not partners. Story, Partn. 649; Mumford v. Nicoll, 20 Johns. 611; 4 Johns. Ch. 532, 3 Kent, Comm. 152–154. The vessel here, then, not having been owned as partnership property among its part owners, the result of a lien as in case of partnerships, does not follow; and Dimon's right to it as mortgagee of one owner, is not affected by this verdict or any claim over by the other owners hereafter, for any excess collected from them for supplies. That claim extends only to De Wolf in personam, and any property in the ship not sold or mortgaged, or any residuary interest like an equity of redemption not conveyed. In respect to this interest in the cargo, that may be different, and will soon be examined. The ownership in a vessel is one thing, and stands by itself; and in the absence of any special contract, it is governed by the general principles of law, to which I have adverted,—no lien on it belongs to a creditor who furnishes supplies to a vessel when at home, without a special statute, nor belongs to a part owner for contribution; but usually whoever first attaches or first obtains a mortgage of the property of a part owner in a vessel holds it. Post v. Kimberly, 9 Johns. 470; Thorndike v. DeWolf, 6 Pick. 124, 125.

Having thus disposed of the objection to testimony on account of the shares in the vessel, the more doubtful question remains, as to the cargo and proceeds. It seems that they also were mortgaged to Dimon. But what the particular contract was in this case in respect to them, if any existed, was not shown at the trial, nor exhibited in the motion filed in this case for a new trial. Nor has it since been agreed to be made a part of the case, and examined by the court, as if a part of the original motion. In the absence of any proof at the trial what the special contract was, by the owners of the Corinthian, as to the cargo, or even whether there was any, the court must leap in the dark, or consider the case as if no special contract whatever was made. The part owners would then stand, as to the cargo, as they do in respect to the vessel, and their interest in both be those of tenants in common and not joint tenants or partners. Each owner, and the mortgagee of each, would then hold his share subject to no lien; but each owner and each mortgager be liable in personam only for contribution. This view is forced on the court by compulsion, from the absence of other evidence. And if it should be otherwise, after proving all the facts, it is the misfortune of the plaintiffs not to have put in evidence all the appropriate facts at the trial, to raise the question which would exist had the whole then been made a part of the case. The result, however, now may not be different from what it would be if another trial was had, and Dimon was made clearly a competent witness, under a release by him as to the cargo. The result now, too, does not seem

to vary from the apparent justice of the case, after so much evidence as there was here, that DeWolf was either treated originally alone, or his note taken in payment afterwards, and unusual time given without a call on the owners, till he settled with the owners its amount, as if it had been advanced and accepted by the plaintiffs from him alone. This fact has been testified to in other cases, by other witnesses, and not by Dimon alone. It is customary under such circumstances, not to disturb a verdict, but only when injustice seems manifest, or some ruling or instruction in law was clearly wrong, and on a material point. 5 Ham. 109; Id. 117, 1 Chip. 304; 5 Ham. 509; U. S. v. Duval [Case No. 15,015]; 5 Mass. 547; 18 Pick. 13.

Under these views the court cannot, without travelling out of the record, say whether Dimon might not be technically an incompetent witness, in respect to his interest in the cargo, if there was a special contract between the owners and crew. I can conceive of such special contracts as would create such a lien, and render a part owner of the cargo, or his mortgagee, technically incompetent, and such an one as would not do this. It must exist,—be made a part of the case, and carefully examined before it can be decided on. The whole title of the cargo may be vested in the managing owners; and then they are trustees for the shareholders, including the owners, crew and seamen, to pay over the due portion to each, after deducting all expenses. See Joy v. Allen [Case No. 7,552]; Mumford v. Nicoll, 20 Johns. 611. This depends entirely on the agreement in each case. Story, Partn. § 427. The ship is one thing, and owned by one class of persons, in a whaling voyage; while the cargo is another, and may be owned, in part, by another class, the officers and crew in connection with owners; and owned often under agreed conditions and liabilities peculiar to that branch of business, and usually embodied in a special written contract. There are some analogies both ways, which may be adverted to, but as to which no decision is given. The seamen may sue in admiralty for their share, as wages, in such voyages, under some special contracts, after the cargo is sold, and are not driven to a suit at law on the special contract. Coffin v. Jenkins [Case No. 2,948], and cases there cited. Yet this arose, perhaps, from indulgence to the seamen for expedition, and does not show that, till the sale and readiness to account, but rather confirm that till then the whole legal title to the cargo is in the owners, under the special contract, when, as before described, it is made subject to all just charges on it before those interested in equity can prosecute for any separate share as wages, or otherwise. Sometimes, however, the owners and officers and crew, as to the cargo, become only quasi partners, and not actual partners. 8 Barn. & C. 612; Joy v. Allen

[supra]. Till then, as between the owners, whether this be called a copartnership in equity as regards their interest, or a trust in which each has a pro rata interest, the directors or owners of the ship are often specially made agents and trustees to sell and dispose of the cargo by the very terms and spirit of what is often an ordinary whaling contract. The legal title is in them, in such case. And where the master has, by usage, a lien on the lays (shares) of seamen for supplies furnished to them, as is often the case, it is not lost by delivering the oil to the owners for this special purpose of selling it in behalf of all interested. Barney v. Coffin, 3 Pick. 115. So, the ship's husband, if making advances in such a case, has a lien on the share of each in the cargo. Abb. Shipp. 138; Holderness v. Shackels, 8 Barn. & C. 612; Story, Partn. § 433. In such a case, also, if one part owner becomes bankrupt, the others may deduct from the profits of the voyage, enough to pay his share in the outfits. Cases just cited; Abb. Shipp. 140, 142; Story, Partn. §§ 408, 441, 444—448; Patton v. The Randolph [Case No. 10,837]. Of course, then, anything which is a new charge on these funds, such as a payment of the plaintiffs' claim out of it, instead of collecting it of DeWolf alone, would seem to tend to diminish the amount of interest of each part owner in them, and consequently of the interest of the mortgagee of the share of any in these funds. All just debts, advances and expenses, must be paid before a mortgagee or private and separate creditor can receive any balance. 20 Johns. 627; 1 Ves. Sr. 239; 4 Ves. 396; 17 Ves. 193; Camp. 445. As at present advised, though it might be different on examination, when such a whaling contract of this special kind between the owners and the crew shall make a part of any case, it looks very doubtful, whether a mortgagee of such a share is competent as a witness in a suit, the damages in which may legally become a charge on that share.

There is another reply urged by the respondents against setting aside the verdict, on account of Dimon's interest, viz: that the other testimony made out a case for them strongly enough without him. But I do not think that the case was, in all respects, made out so fully without Dimon's testimony as with it. Indeed, one point, the settlement among the owners on the faith that DeWolf had been accepted by the plaintiffs as alone responsible for the copper, was proved by him alone at this trial, and may be the very ground on which the jury found a verdict for the defendants. It may be said, further, that Dimon is interested to increase DeWolf's estate,—a debtor to him, though as mortgagee of a part owner, there is no lien on his share in this particular vessel, to be affected by the result. But such a general interest does not disable a creditor from being a competent witness for his debtor. It is too remote and contingent. Seaver v. Bradley, 6 Greenl. 60.

But if he has a claim on specific property of the debtor as his assets, being a bankrupt he cannot be a witness to increase their amount. 1 Greenl. Ev. 436, 437; 5 Johns. 422; 2 Pick. 240; 9 Pick. 322. It is on this ground that a witness who is a legatee cannot testify as to the estate, to increase it. Greenl. Ev. 437. Nor can a person be a witness where he could use the verdict, or it could be used against him. 1 Greenl. Ev. 477; 10 La. 124. If, therefore, this case showed that this verdict could be used for or against Dimon, or that a lien existed on the share mortgaged to him, whether in the vessel or cargo, then it is quite manifest that his testimony ought to be excluded. But when facts have not been introduced which show such a specific lien, his general interest under the mortgage, in the property, does not appear to be necessarily increased or diminished by the result.

Lastly, under this head has been urged Dimon's interest, because liable merely as mortgagee of the share, and not because any specific lien exists on it in favor of creditors of the mortgager and other owners. But it is a general rule that a mortgager in possession as DeWolf was in this case, is still to be considered as owner for most purposes, except as between the parties to the mortgage. See the cases collected in Shapley v. Rangeley [Case No. 12,707]; Fiedler v. Carpenter [Id. 4,759]; 11 N. H. 40; 12 N. H. 558. The suit then here by the plaintiffs against the owners, is properly against DeWolf, the mortgager, as one of them, and the remedy over by any of the defendants for what is collected of them beyond their proportion, is against DeWolf, the mortgager in possession when the supplies were furnished, and not against Dimon, the mortgagee out of possession.

Another ground, and the last one urged for a new trial, is in relation to matter happening since the verdict. It is alleged to be the discovery of new and material evidence. That is certainly one legal ground for a new trial, if well supported. But in order to do that, firstly, the party must not have known the existence of such evidence before, nor had the means of easily discovering it. 2 Bin. 582; 2 Fair. [11 Me.] 218; Williams v. Baldwin, 18 Johns. 489. One case exists of a new trial granted for the discovery of such evidence, though it had been actually in the possession of the party's attorney. Broadhead v. Marshall, 2 W. Bl. 955; 2 Root, 454. But if actually known by the party, at any time before the jury retired, or even before a verdict is rendered, no new trial can be allowed on account of it. Ames v. Howard [Case No. 326]; 7 Cow. 269. The matter, considered new and important evidence in this case, it is true, was since developed, though it came from a witness by the name of Dearth, who had been on the stand in some former trials. But he is not shown to have disclosed then what is now regarded as

new. There seems, however, to have been some inattention or neglect in not questioning him more fully on former trials, as he being clerk of DeWolf, was likely to know all the facts connected with the case.

The next requisite is that such new evidence must be material. Tuttle v. Cooper, 5 Pick. 414; Marshall v. Union Ins. Co. [Case No. 9,134]; 5 Serg. & R. 41. As detailed here in the affidavit of Marcy, a son of the plaintiff, which is the only affidavit about it put in the case on the part of the plaintiffs, it would be material. But the counter affidavit of Mr. Blake, on file, denies the truth of the most important points in the newly discovered evidence named by Marcy. And on examination it will be found that Marcy does not swear, of his own knowledge, to any of the new evidence, but merely to what the counsel for the plaintiffs have informed him from their minutes. This is quite too loose. Again, if the statement was in the main correct, it all relates to what Dearth, a witness on the stand for the respondents, is supposed to have disclosed at a subsequent trial about supplies furnished to the ship Corinthian, by Fearing and others. Now, though Dearth there may have sworn to the owners allowing DeWolf to pledge their credit in some cases and not in others, it would not affect, directly, the present case of these plaintiffs, unless they allowed it as to them. And if Dearth testified to a written agreement having once existed as to fitting out the Corinthian, it is not produced, nor its contents given so as to enable the court to judge if it be material. And the probability is from the other facts in the case, that it related to the circumstance with whom of the partners a willingness existed to fit out the vessel at all; because it is conceded that only a part of them agreed to do it, and they gave a bond of indemnity to the other owners; and there was some written stipulation concerning it among them.

Again, it seems to be settled that no uncertainty or doubt must exist as to what the newly discovered testimony really is. so that the court may see what is the effect of it, and whether a new trial on account of it is required in order to be substantial justice. 4 Ham. 5; 5 Halst. [10 N. J. Law] 250; 1 Caines, 24; 1 A. K. Marsh. 188. For this reason the statement of it must be by other affidavits than those of the party, or one interested; and it must be by the new witnesses themselves, if they are procurable. Webber v. Ives, 1 Tyler, 441; Chambers v. Brown, Cooke, 292; [Scott v. Wilson] Id. 315. If it be said that Dearth is a witness for the defendants and may not be willing to give his affidavit, the plaintiffs could at least apply to him for it and for the paper referred to, and ought to do it. Another difficulty here is that Dearth, as the witness for the other side, has in the other trial been attempted to be discredited, and represented as unworthy of full belief; and it is well settled that the newly discovered testimony must not come from a person unworthy of credit. Williams v. Baldwin, 18 Johns. 489; Pomeroy v. Columbian Ins. Co., 2 Caines, 260.

In the next place, the newly discovered evidence must not be merely cumulative evidence. 8 Johns. 84; 15 Johns. 210; 2 Caines, 129; 6 Pick. 114, 116; 10 Pick. 16; Alsop v. Commercial Ins. Co. [Case No. 262.] It must not be, as here, to old points, and of the like kind before adduced at the trial, but of a new description or to new points. Guyott v. Butts, 4 Wend. 579; 3 A. K. Marsh. 104.

Upon the whole, the inclination in my mind, in this as in the other case, is also not to disturb what the jury have settled, unless a very strong and clear ground is made out; and especially where another trial of this case would probably be so doubtful and speculative in its result, as well as in its equities,—looking to the experience which the court has already had in the long litigation about the supplies to the ship Corinthian.

It interests the republic that there should be an end to litigation as soon as may be. It saves enormous expenses and social strifes, and the temptation to a host of perjuries. If a proper case was made out here for a new trial, on the ground of newly discovered evidence, it could be only on the condition that all the costs of the former trials be first paid by the plaintiffs. So far as regards that, the expense and cost already incurred are justly chargeable upon the party making the motion for a new trial, on this ground, as it is he who asks the favor, and it is he who has thus far failed to obtain and offer evidence sufficient to sustain his case. Boswell v. Jones, 1 Wash. [Va.] 322; 3 Rand. [Va.] 52; Weak v. Callaway, 7 Price, 677. A new trial, then, would probably cost more than it is really worth, considering the difficulties and doubts and contradictions which have surrounded this controversy from the start. Sometimes there may be a new trial as to a particular fact,—separately, and not affecting other matter,—where the ruling was wrong as to some of the evidence, or if the newly discovered evidence relates to a single distinct matter. Robbins v. Townsend, 20 Pick. 351; 12 Pick. 287. (See Morris v. State, 1 Black [66 U. S.] 37. The whole trial must be on the whole case.) But nothing of that kind is here feasible, if a case was well made out in relation to either ground.

As this whole case is surrounded, and has been from the start, with difficulties, both as to facts and the law, and as the verdict seems to accord with the apparent justice of the case, and there is no objection in law clearly made out against it, I am unwilling to disturb it. Possibly there may have been an error, and possibly some facts exist which are not in the case now; but as these, if put into it, would not on another trial be likely, materially, to change the aspect of it, let there be entered judgment on the verdict.